NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4106
_____

UNITED STATES OF AMERICA

v.

ROBERT HOLMES
a/k/a
BOXING BOB,

Robert Holmes,

<u>Appellant</u>

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 02-00172-031)
Honorable Stewart Dalzell, District Judge
_____

Argued November 17, 2010

BEFORE:  AMBRO, FISHER, and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed:  December 16, 2010)
_____

Jonathan H. Feinberg (argued)
Kairys, Rudovsky,
Messing & Feinberg
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106

   <u>Attorneys for Appellant</u>

Zane David Memeger
United States Attorney
Robert A. Zauzmer
Assistant United States Attorney
Chief of Appeals
Michael J. Bresnick (argued)
Kathy A. Stark
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

    Attorneys for Appellees

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

This matter comes on before this Court on an appeal from an order dated October 16, 2009, and entered on October 20, 2009, denying appellant Robert Holmes' amended motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 ("section 2255").  We trace the case to October 24, 2002, when a grand jury returned a 135-count third superseding indictment charging Holmes and 36 co-defendants with numerous drug trafficking and firearms offenses.  In particular, the indictment charged Holmes with conspiracy to distribute cocaine and cocaine base ("crack"), in violation of 21 U.S.C. § 846 (Count 1), and conspiring to possess a firearm in furtherance of the drug trafficking crime charged in Count 1, in violation of 18 U.S.C. § 924(o) (Count 120).  The conspiracy to possess a firearm resulted in the death of a member of a drug gang that was a rival of a gang in which Holmes was a member.

2

Inasmuch as Holmes gave a comprehensive statement to Bureau of Alcohol, Tobacco and Firearms Agent Anthony Tropea implicating other defendants that, as a practical matter, could not be redacted, the District Court tried Holmes separately from his co-defendants.  Christopher J. Warren was Holmes' attorney at the trial.  The jury returned guilty verdicts on both counts against Holmes.  On August 31, 2004, the Court sentenced Holmes to a 400-month term of imprisonment to be followed by a ten-year term of supervised release.

Holmes appealed to this Court, but, while the appeal was pending, the Supreme Court released its opinion in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).  Consequently, in accordance with our practice at that time with respect to appeals pending when the Supreme Court decided Booker, we remanded Holmes' case for resentencing to the District Court.  But on August 16, 2005, that Court again sentenced him to a 400-month term of imprisonment.  Holmes again appealed, and on November 1, 2007, we affirmed his conviction and sentence. [1]

On January 26, 2009, Holmes, represented by a new attorney, Jonathan H. Feinberg, whom the District Court appointed to represent him, filed a timely motion with the District Court under section 2255 to vacate, set aside, or correct his sentence.  Holmes argued, among other things, that his trial counsel's "concession of guilt" on Count 120

---

[1] Warren, whose representation of Holmes at the trial is challenged in these proceedings, represented Holmes on his direct appeal and filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396 (1967), in which he, quite naturally, did not raise the issues involved in this section 2255 case.

denied him effective assistance of counsel.[2]  The Court held an evidentiary hearing on the motion at which his trial attorney, Warren, testified and explained his trial strategy. Subsequently, the Court denied the section 2255 motion and refused to issue a certificate of appealability.  Holmes then appealed to this Court, following which we issued a certificate of appealability on Holmes' "claim that trial counsel was ineffective for conceding guilt on Count 120."  In our order granting the certificate we cited Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000).

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under section 2255 and we have jurisdiction under 28 U.S.C. § 1291.  The conventional statement of our standard of review in a section 2255 case is that we exercise plenary review of a district court's legal conclusions but apply a clearly erroneous standard in considering its factual findings.  See United States v. Cepero, 224 F.3d 256, 258 (3d Cir. 2000) (en banc).  Here, however, the historical facts with respect to the issues on this appeal are not disputed and, consequently, we effectively are exercising plenary review over the entire appeal.

## III.  DISCUSSION

Holmes claims that what he regards as Warren's concession of guilt on the lesser of the two charges against him, the charge in Count 120, completely denied him counsel

---

[2] Feinberg's representation of Holmes has been outstanding throughout these section 2255 proceedings.

at the trial because he could be guilty of the violation charged in Count 120 only if he also was guilty of the charge in Count 1. Thus, Holmes argues that Warren's concession with respect to Count 120 in reality encompassed both counts of the indictment, and, accordingly, that Warren conceded that Holmes was guilty on both Counts 1 and 120. Holmes contends, alternatively, that even if Warren did not completely deny him counsel, Warren's concession on Count 120 rendered his assistance to Holmes ineffective.

At the outset of our discussion we emphasize that it is important to recognize the significant difference between claims that there has been a complete deprivation of counsel and an ineffective assistance of counsel in that to establish the latter, but not the former, a defendant must demonstrate that his counsel's deficiencies prejudiced his defense at the trial. See Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067 (1984). The explanation for the difference is that if there is effectively a denial of counsel, the adversary process is deemed unreliable. See United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047 (1984). Therefore, if Holmes is correct that Warren's concessions so abandoned him as to deny him counsel, even if they did not prejudice his defense, he is entitled to relief in these proceedings.[3] There is no equivalent presumption when a defendant asserts that his trial counsel gave him ineffective assistance.

---

[3] Though it might be thought that an attorney's concession of his defendant-client's guilt necessarily is prejudicial, that might not be so in a case in which the evidence against the defendant was so overwhelming that even without the concession the defendant had no chance of obtaining a not guilty verdict.

As we have indicated, Holmes contends that Warren wrongly conceded that he was guilty of the offense charged under Count 120. The government denies that this is so. In support of his assertion Holmes points to Warren's opening statement in which he suggested that the government would be able to meet its burden of proof on Count 120 when he stated: "And at the end of this trial, the most, I suggest to you, the most that you will be able to unanimously say beyond a reasonable doubt he did is charged in Count 120." App. at 296. Thus, Holmes believes that Warren conceded that Holmes was guilty on Count 120 at the outset of the trial.

Holmes argues that at the end of the case Warren reiterated his concession when, during his closing argument, he stated that "because of the evidence, you should find him not guilty of the conspiracy in Count 1. And if you're going to convict, convict on Count 120." Id. at 978-79. Moreover, Warren commented in his closing that:

> Now, I'm not asking you to like Robert Holmes. I'm not asking you to condone what he did. I'm not asking you to do anything of the sort. All I'm asking you to do is to hold him legally responsible for what he did, for what they proved he did. And what they proved he did, folks -- and these are the only, only unequivocal facts in this case -- he was dealing what? They caught him with $20 worth of dope on October 4, 1999 -- actually, there are three -- two, he was involved with the thing at Fatima's; and three, he was involved reluctantly with what occurred at 58th and Willows.
>
> Now, ladies and gentlemen, those are three unequivocal facts. They are not contradicted by statements given to Agent Tropea. They are not contradicted by prior sworn testimony. And they are sufficient to support a conviction on count 120.

Id. at 978.

6

Holmes argues that Counts 1 and 120 were intertwined inextricably and thus Warren's concession on Count 120 gave away the entire case. This argument has support in the record and in the law, for the District Court's jury instructions effectively told the jury that it necessarily first would have to find Holmes guilty of Count 1 before it could find him guilty of Count 120, as an element of the offense in Count 120 was that Holmes committed the offense charged in Count 1. The Court had good reason to give that instruction because the gun possession conspiracy in furtherance of a drug trafficking crime charged in Count 120 referred to the same crime charged in Count 1.

Holmes correctly contends that the jury was troubled by the inconsistency between Warren's argument distinguishing between Counts 1 and 120 and the Court's instructions for, during its deliberations, the jury asked the Court whether Holmes could be convicted on Count 120 without being convicted on Count 1. The Court answered affirmatively but its answer must have puzzled the jury for it later asked the Court: "How can element one [the conspiracy] of Count 120 be satisfied without finding defendant guilty of Count 1." Id. at 1033. The Court answered: "Because the law as the U.S. Supreme Court has construed it, allows it." Id. The Court predicated its undoubtedly correct answer on the Supreme Court's opinion in United States v. Powell, 469 U.S. 57, 105 S.Ct. 471 (1984), which held that it is permissible for a jury to return inconsistent verdicts and that such verdicts can stand.[4]

---

[4] We are not concerned here with a situation in which a conviction on one count is an element of another count. Thus, the District Court instructed the jury that one of the elements of Count 120 was that Holmes "committed a drug-trafficking crime" and that the government alleged that that crime was Holmes' participation in the conspiracy

As we have indicated, at the evidentiary hearing Warren explained his trial strategy. He testified that Holmes faced a potential life sentence if convicted on Count 1 but that Count 120 carried a statutory maximum of 20 years. Warren testified that he was faced with a difficult situation because he believed that the comprehensive statement that Holmes had given to Agent Tropea was so inculpatory that the jury would not acquit Holmes on both charges. Warren explained that he sought to obtain a compromise verdict because such a verdict is "a reality and that's a lot more viable than trying to hit a home run in this case." App. at 65. Warren believed that unless he used the strategy that he employed, "you run the risk of getting him convicted quite quickly on both counts." Id. Moreover, Warren testified that he did not concede that Holmes was guilty of the charge in Count 120 or that the government had met its burden of proof on that count, and he did present a defense to both Count 1 and Count 120.

At the conclusion of the evidentiary hearing, the District Court reminded Holmes that it had told him at the end of the trial that, despite the jury's verdict, his attorney's representation had been "superb." The Court then stated that it wished to "amend the word 'superb' to the word 'exquisite.'" App. at 138. The Court agreed with Warren that Holmes' statement to Agent Tropea was an overwhelming obstacle to Holmes' defense. The Court also concluded that Warren had not conceded Holmes' guilt on Count 120, but that even if he had done so his goal was to achieve an acquittal on Count 1 in exchange for a guilty verdict on Count 120. The Court noted that the jury deliberated for two

charged in Count 1. App. at 1000. But the Court did not tell the jury that to convict Holmes on Count 120 it had to convict him on Count 1.

8

hours, a longer period than it had anticipated it would, and the Court stated that it was impressed with Warren's strategy. The Court also believed that the jury's question with respect to the relationship between the two counts, to which we have made reference, was proof of the partial success of Warren's strategy, for the question showed that the jury had listened to his theory of the case.

Holmes rejects the District Court's conclusion and argues that Warren's strategy was risky and objectively unreasonable. Holmes contends that Warren directly conceded his guilt on Count 120. He further contends that, rather than seeking to obtain a compromise verdict, Warren should have emphasized the government's burden of proof and questioned the credibility of its witnesses by pointing out inconsistencies in the government's case.

In considering this matter we do not doubt that Warren testified at the hearing as to what he actually believed was the way he conducted Holmes' defense when he said that he did not concede that Holmes was guilty on Count 120 and that he mounted a defense to the government's entire case by arguing from the evidence in an effort to persuade the jury to acquit Holmes. Moreover, it certainly is true that, in both his opening statement and his closing argument, Warren stressed the government's high burden of proof, commented on inconsistencies in the government's witnesses' testimony, and observed that there was reasonable doubt that Holmes conspired with other persons to murder the member of the rival drug gang.

Nevertheless, our consideration of the totality of Warren's remarks to the jury leads us to conclude that no matter what Warren thought he was arguing, the jury

9

necessarily believed that he was conceding that Holmes was guilty on Count 120. Though we recognize that some of Warren's statements were equivocal with respect to Holmes' guilt on Count 120, Warren did not equivocate when he said to the jury that "[a]ll I'm asking you to do is to hold him legally responsible for what he did" and the facts at the trial "are sufficient to support a conviction on Count 120." App. at 978. We realize that an attorney could concede that certain evidence was sufficient to support a guilty verdict but that the jury nevertheless should not return such a verdict because the evidence was untrue. Warren, however, through pointing out that there were inconsistencies in the government's case and there was reasonable doubt as to some facts at issue, simply did not contend that the jury should reject the evidence supporting the government's case on Count 120. Thus, we go forward in this opinion from a base that includes a conclusion that Warren conceded to the jury that Holmes was guilty on Count 120.

Yet we are satisfied that, notwithstanding Warren's concession on Count 120, he did not deny Holmes counsel and thus <u>Cronic</u> does not control our result in this case. After all, Warren surely was arguing that Holmes was not guilty on Count 1, the more serious of the two counts of the indictment as a defendant convicted under that count was subject to a possible life sentence whereas the maximum custodial term under Count 120 was 20 years. Furthermore, the courts do not hold that an attorney who concedes his client's guilt on one count of a plural count indictment necessarily denies his client of the benefit of representation of counsel. To the contrary, the courts recognize that sometimes a trial attorney "may find it advantageous to his client's interests to concede certain

10

elements of an offense or his guilt of one of several charges," and that making such a concession may be an acceptable "tactical" decision. United States v. Swanson, 943 F.2d 1070, 1076 (9th Cir. 1991).

It is clear that, although Warren's strategy can be challenged, he made a well-reasoned decision as to how to proceed in Holmes' best interests. He followed an understandable trial strategy of seeking a verdict finding Holmes not guilty on Count 1, the more serious count, in return for a guilty verdict in Count 120. Thus, this case differs from a case like Swanson where the defendant's attorney said that there was no reasonable doubt as to the factual issues in dispute and that there was no reasonable doubt that his client was the person who committed the conduct that constituted the crime charged in the indictment. In Swanson the Court of Appeals said that "the Government has failed to identify any strategy that can justify [the defense attorney's] betrayal of his client." Id. at 1075. Here, however, Warren had a justifiable reason to use his strategy, i.e., an attempt to obtain an acquittal on the more serious of the two counts in the indictment.

We also conclude, contrary to Holmes' argument, that Warren was not constitutionally ineffective even though his strategy not to "put up much of a fight," app. at 59, on Count 120 was really a concession of guilt on that count, as his strategy was objectively reasonable because the evidence on that count was overwhelming and, as he correctly understood, the potential penalties for a conviction of Count 120 were significantly less serious than those for a conviction on Count 1. In the circumstances, Warren's conduct of Holmes' defense simply was not deficient. Quite to the contrary, it

11

was based on his correct understanding of the law and the facts of the case and was well thought out.

In reaching our conclusion both with respect to the denial of counsel and the claim that counsel was ineffective, we recognize that, as the case was presented to the jury, the conspiracy charged in Count 1 was an element of the conspiracy charged in Count 120.[5] But Warren correctly understood at the time of the trial that the Supreme Court had held in Powell that juries sometimes return logically inconsistent verdicts, and, indeed, experienced judges and trial attorneys are well aware that they do so. Thus, Warren's strategy was to offer a limited defense on Count 120 that the jury surely understood to be a concession of guilt on that count, and to seek to obtain, at worst, a compromise verdict. This approach was not a denial of counsel, had a legally justified foundation, and, in the face of the strength of the evidence against Holmes, was a reasonable approach for Warren to take in Holmes' defense. In the circumstances, though Holmes' argument has a correct technical basis as well as a surface appeal, in the end it is nothing more than a second-guess attack on a strategy that, although not successful, was not deficient.

---

[5] The government on this appeal advances an argument that it did not raise either at the trial or in the District Court in these section 2255 proceedings, namely "that Holmes' entire argument collapses [because] it is inaccurate to assert that a concession of guilt as to Count 120 simultaneously admits guilt of Count 1." Appellee's br. at 39-40. The government bases this argument on an intricate discussion of the distinction between conspiracies and substantive offenses that we need not explain. Clearly, the government's contention misses the point of this appeal, for the Court told the jury that a conviction on Count 120 depended on Holmes having committed the offense charged in Count 1 and thus the Court instructed the jury to deliberate on the basis of that understanding of the law. Accordingly, even if the Court erred in that charge, Holmes' contention that Warren effectively conceded that Holmes was guilty on Count 1 by conceding his guilt on Count 120 would not be undermined.

There is a second and independent reason why Holmes is not entitled to relief under Strickland. As we indicated above, a Strickland ineffective assistance of counsel claim has two elements, counsel's deficient performance and prejudice to the defendant by reason of that deficient representation.[6] We are satisfied that Warren's defense of Holmes did not prejudice him. In reaching this conclusion, we observe that the strength of the government's case was such that we see no basis to conclude that if Warren, without equivocation, had argued that Holmes was not guilty on either count that there is a reasonable probability that "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. We are confident in our result because, in addition to the other evidence in the case, Holmes made an inculpatory statement to Agent Tropea and the evidence against him included the testimony pursuant to cooperation agreements of three defendants charged in the indictment with respect to Holmes' role in the conspiracies. Moreover, it is significant that Warren, Holmes' experienced defense attorney, believed that the case against his client was so overwhelming that it was unrealistic to expect to be able to hit a "home run" in Holmes' defense and that the experienced District Court, when denying Holmes relief in these proceedings, remarked that the jury's deliberation of two hours took longer than it expected that it would.[7] We believe that the Court anticipated that there would be shorter deliberations because of the strength of the case that the government presented before it.

_____

[6] The lack of prejudice is not an answer to Holmes' Cronic claim.

[7] Plainly the government put together strong cases against the defendants in the 135-count indictment, as it indicates that "of the 37 defendants indicted in the case, . . . 36

13

## IV. CONCLUSION

For the foregoing reasons the order of October 16, 2009, and entered October 20, 2009, will be affirmed.

---

were either convicted or pled guilty, and one . . . was acquitted." Appellee's br. at 29. In total, because of trial severances there were seven trials under the indictment.

_____

AMBRO, Circuit Judge, concurring

I concur with the judgment in this case, but do so for the alternate reason given by colleagues: there was no prejudice to Holmes by the conduct of his counsel at trial. I part with my colleagues in their view that the concession of guilt made by Holmes' trial counsel was "a well reasoned decision as to how to proceed in Holmes' best interest," and thus not deficient under Strickland v. Washington, 466 U.S. 688 (1984).[1]

To review the bidding, Count 1 of the charges against Holmes was that he conspired to distribute more than (i) 600 kilograms of cocaine and (ii) 400 kilograms of cocaine base (or crack). As noted in the majority opinion, a conviction of this count carries a maximum sentence of life.

Count 120 charges conspiracy to possess a firearm in furtherance of a drug trafficking crime. That conspiracy, though it resulted in the death of a rival gang member, nonetheless carried a maximum sentence of 20 years.

Count 120 had three elements, the first of which was that Holmes knowingly committed a drug-trafficking crime. You don't have to imagine what that drug-trafficking crime was – the conspiracy to distribute cocaine and crack as charged in Count 1.

---

[1] I agree with my colleagues that Strickland, which requires prejudice to accompany deficient performance, is the test to apply. I also agree that counsel's performance at trial here does not approach the fault needed to forgo, under United States v. Cronic, 466 U.S. 648 (1984), a prejudice assessment.

Mr. Warren, Holmes' court-appointed counsel, was between a rock and a hard place. He had a client who would not cut a plea deal, yet that client, a convicted felon, had made a lengthy statement to a law enforcement official (Agent Tropea) admitting that he had carried a gun and acted as a "gunman" for a group "hustling" drugs. Plus there were three alleged co-conspirators testifying against Warren's client.

Reading the trial transcript shows Warren doing his best to escape the overwhelming evidence against Holmes. Among other things, Warren resorted to the typical tactic of conceding a lesser charge to gain credibility with the jury in the effort to gain acquittal on the greater charge. (This is known as a "compromise verdict.")

In Warren's jury summation, the following passage in particular concedes guilt on count 120:

> [Holmes] got out there, even though -- *I do agree with the prosecutor.* Even though he didn't get out of the car, *that's not a defense. Conspiracy is an agreement to do it. . . . But he went out there. He did go out there. That's the essence or the gist of count 120. . . .*
>
> Now, I'm not asking you to like Robert Holmes. I'm not asking you to condone what he did. I'm not asking you do to anything of the sort. All I'm asking you to do is to hold him legally responsible for what he did, for what they proved he did. And what they proved he did, folks – and these are the only, only *unequivocal facts in this case* – he was dealing what? They caught him with $20 worth of dope on October 4, 1999 – actually, there are three – two, he was involved with the thing at Fatima's; and three; *he was involved reluctantly with what occurred at 58th and Willows* [Streets] [the crime alleged in count 120].
>
> Now, ladies and gentlemen, *those are three unequivocal facts.* They are not contradicted by statements given to Agent Tropea. They are not contradicted by prior sworn testimony. *And they are sufficient to support a conviction on count 120.*

2

(App. 974-75, 978) (emphases added).

This, however, was not a typical case, something I am not sure counsel realized at the time he made the statements at trial. But the jury realized quickly the trap Warren had placed for his client, for it went back to the trial judge – not once, but twice – and pointed out, in effect, that no compromise was possible because it was instructed that, in order to find guilt on Count 120, it had to find that the Government had proved beyond a reasonable doubt that the "defendant knowingly committed a drug-trafficking crime, *which in this case the Government has alleged to be the conspiracy to distribute cocaine and cocaine base as charged in Count One.*" (App. 1020) (emphasis added).[2] Given its

_____

[2] Warren was aware later of this unique situation, as the following colloquy between Holmes's new counsel and Warren reveals at Holmes' *habeas* hearing.

> Q.  Count 1 and Count 120.
> A.  Sure.
> Q.  Interesting and unique arrangement of these crimes where the … count with the more significant sentencing consequences is essentially an element of the count with lesser sentencing consequences; right?
> A.  Correct.
> Q.  This is *not your typical case* where you've got a conspiracy and perhaps a possession with intent to deliver count and you might take responsibility on the one count, but then argue as to the conspiracy; right?
> A.  Correct.
> Q.  *So this is maybe the reverse of the typical situation where you might have a concession?*
> A.  *Correct.*
> Q.  And you obviously were aware of that, *that guilt on Count 1 was an element of guilt on Count 120.*
> A.  Sure.
> Q.  So the fine line that you were trying to walk, you understood there was a significant risk that the jury would see a suggestion of guilt on Count 120 and also be aware of guilt or make a finding of guilt on Count 1?

3

unusual nesting of the greater count within the lesser conceded count, we have a rare

situation in which Warren's trial strategy amounted to asking the jury for an *inconsistent*,

rather than a *compromise*, verdict.[3]

While Warren surely faced an uphill (I think unwinnable) battle, and indeed

began his representation under the impression that Holmes would enter into a plea

agreement, that agreement did not occur. In these unique circumstances, the tactic

---

A.  Sure.
Q.  You said on your direct examination that this was not really a concession, it was more of a suggestion.
A.  Correct.
Q.  *Did you put up much of a fight on Count 120 in your argument?*
A.  *In all candor, no.*
    …
Q.  *Now, when you did that, though, you were aware that the Judge was going to instruct the jury that you can't be found guilty of Count 120 unless you're guilty of Count 1.*
A.  *Correct.*
Q.  And you also were aware of the standard instructions given by the Court that if you find proof beyond a reasonable doubt as to each of the elements, you've got to find the defendant guilty; right?
A.  Yes.

(App. 58-59, 63) (emphases added).

[3] We read too much into *United States v. Powell*, 469 U.S. 57 (1984), if we sanction it as a trial strategy. Warren acknowledged as much at the evidentiary hearing in the District Court: "I'm not saying *Powell* is a recognized legal strategy. . . . All *Powell* says is you can't do anything with it on appeal, all right, but it recognizes the idea of compromise verdicts." (App. 64-65.) As my colleagues and I point out, the jury was troubled by the logical inconsistency inherent in Warren's argument. I also note that the trial judge gave the jury a standard instruction regarding its duty to follow the law: "I instruct you that you must accept the rules of law as I've given them to you, regardless of whether you agree with them or not, and apply the law as I've stated it to the facts that you find." (App. 1023.) In other words, jurors, who know nothing about the nuances of *Powell*, simply must follow an instruction on law given them no matter how inconsistent (or compromised) it is. Thus, when the jury pointed out the inconsistency here, it was told that "the law, as the U.S. Supreme Court has construed it, allows it." (App. 1033.)

4

Warren tried at trial was illogical, and thus unreasonable. However, like my colleagues, I do not find that it prejudiced Holmes in light of the overwhelming evidence against him.