**CRAIG G. FRANCIS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2009-0106

Supreme Court of the Virgin Islands

July 31, 2012

DOLACE MCLEAN, ESQ., VISIONS Law Firm, St. Thomas, USVI; TERRY M. HALPERN, ESQ., St. Thomas, USVI, *Attorneys for Appellant.*

■■■■■ ■■■■■■■■ ■■■■■

TIFFANY V. MONROSE, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.* SWAN, *Associate Justice*, dissenting.

## OPINION OF THE COURT

(July 31, 2012)

CABRET, *Associate Justice.* Appellant Craig Francis seeks, on numerous grounds, reversal of his convictions for aggravated rape in the first degree, three counts of assault in the third degree, and using a dangerous weapon during the commission of a crime of violence. Since the Superior Court erred when it *sua sponte* invoked Federal Rule of Criminal Procedure 12.1 to strike Francis's alibi witnesses without performing the required balancing test, this Court reverses Francis's convictions and remands the matter for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 4, 2008, Francis accompanied his former girlfriend, S.A.J., to the Roy Lester Schneider Hospital for treatment for both poisoning and physical injuries. After Francis was told to look for a seat in the waiting area, S.A.J. told a nurse to call the police. Once Francis returned, a nurse took S.A.J. to an examination room, while Francis was told to remain in the separate waiting area. In the examination room, S.A.J. again told the nurse to call the police, and said that Francis had tried to kill her by forcing her to drink bleach and other household cleaning agents.

As a result of the nurse's call, Angela Trant, a detective assigned to the Domestic Violence Unit of the Virgin Islands Police Department, arrived at the hospital and interviewed S.A.J., who told her that Francis had, among other things, orally and vaginally raped her for several hours and had tried to kill her in a way that would mimic a suicide attempt. After speaking with S.A.J., Detective Trant also interviewed Francis, who, after waiving his *Miranda* rights, told Detective Trant that S.A.J. had called him to request his assistance after she had attempted suicide. Francis, however, terminated the interview shortly after making this statement. Detective Trant arrested Francis later that day, and the People of the Virgin Islands filed an information on March 14, 2008 charging him with numerous offenses stemming from the events S.A.J. had described. On

November 13, 2008, the People amended the information to charge Francis with one count of aggravated rape in the first degree, three counts of assault in the third degree, and one count of using a deadly weapon during a crime of violence.

The Superior Court scheduled Francis's trial for November 17, 2008. However, immediately before proceedings began, Francis's court-appointed counsel — Ariel Smith — notified the Superior Court that Francis was "uncomfortable" with her representation and "not believing that [she] intended to represent him." (J.A. vol. I 32.) After Francis told the Superior Court that he wished to speak with Attorney Smith for five minutes before trial, the Superior Court allowed the break, but told him, "You are not going to get a new attorney. Period." (J.A. vol. II 38.)

Once Francis's trial began, the People called numerous witnesses, including S.A.J., Detective Trant, and various forensic and medical technicians. At trial, S.A.J. testified that Francis arrived at her house at around 3:00 a.m. and orally and vaginally raped her several times throughout the day — including with a broomstick — until approximately 11:00 a.m. In addition, S.A.J. testified that at one point Francis had handed her a razor blade and told her to slit her wrists and, when she refused, put a kitchen knife to her throat and ordered her to drink a cup of bleach. Moreover, S.A.J. stated that throughout the morning Francis had actually forced Clorox, Pine-Sol, and other cleaning agents down her throat, which she only pretended to swallow, but still ended up ingesting some of the chemicals. S.A.J. further testified that, although she offered to write Francis a check for $1,000, he hit her after she failed to properly sign the checks and later placed a plastic bag over her head.

After the People rested its case, Attorney Smith notified the Superior Court that she intended to call two defense witnesses. The first witness, Tyshawna Gibson, testified that, at 7:00 a.m. or 8:00 a.m. on March 4, 2008, Francis had taken her brother to school. The Superior Court, however, abruptly called for a sidebar, at which it asked Attorney Smith whether Gibson was providing alibi testimony. In response to the Superior Court's inquiry, Attorney Smith said, "No, because alibi is usually implying she can only account for his whereabouts for a particular amount of time," and "[h]e was not with her for the entire time." (J.A. vol. I 444.) Although the People then objected to Gibson's testimony based on hearsay and lack of foundation, at no point did the People object based on failure to receive timely notice of the alibi defense pursuant to Federal

207

Rule of Criminal Procedure 12.1 or that the testimony prejudiced its case. Nevertheless, the Superior Court *sua sponte* ordered that Gibson's entire testimony be stricken from the record for failure to comply with Rule 12.1. Shortly after the Superior Court rendered its decision, Attorney Smith rested her case without calling the second witness. On November 19, 2008, the jury found Francis guilty of all five counts. Immediately after the jury announced its verdict, Attorney Smith orally moved for a new trial on the grounds of ineffective assistance of counsel. The Superior Court, in a January 16, 2009 Order, scheduled an evidentiary hearing on the ineffective assistance of counsel claim and appointed a new attorney to represent Francis.

The Superior Court held its evidentiary hearing on May 14, 2009. At the hearing, Attorney Smith testified that she had met with Francis once prior to his trial, and that during this meeting Francis told her that on the morning of March 4, 2008 he had been with a woman who was a cousin of Sherizma Jones — later identified as Gibson — and that S.A.J. knew this woman and was jealous of their relationship, which had spurred her to "do[] this to him." (J.A. vol. II 643.) Attorney Smith further testified that she interviewed Jones and Gibson, and that Gibson had told her that Francis took her younger brother to school that morning, while Jones stated that she had seen Francis outside of her apartment at 10:00 a.m. or 11:00 a.m. Finally, Attorney Smith acknowledged that the People had served her with several requests for the notice of alibi required by Federal Rule of Criminal Procedure 12.1 but that she failed to ever file a notice of alibi because she believed Gibson and Jones were impeachment, rather than alibi, witnesses. After hearing testimony from David H. Jackson — the Office of the Territorial Public Defender's investigator — as well as Jones, Gibson, and other witnesses — all of whom corroborated Attorney Smith's testimony — the Superior Court ordered the parties to submit supplemental briefs on the distinction between alibi and impeachment witnesses. The Superior Court, in an October 6, 2009 Opinion and Order,[1] denied Francis's motion on the basis that Attorney Smith had designated Jones and Gibson as impeachment witnesses rather than alibi witnesses

---

[1] Although signed by the Superior Court judge on October 5, 2009, the Clerk of the Superior Court did not enter the order until October 6, 2009. *See* V.I.S.Ct.R. 5(b)(6) ("A judgment or order is entered within the meaning of this subdivision when it is entered on the criminal docket.").

for strategic reasons, rather than because of a misunderstanding of law. *See People v. Francis*, 52 V.I. 149, 164 (V.I. Super. Ct. 2009).

The Superior Court orally sentenced Francis on October 19, 2009, and on October 29, 2009 memorialized its decision in a written Judgment and Commitment. Francis timely filed his notice of appeal on October 26, 2009. *See* V.I.S.CT.R. 5(b)(1) ("A notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment.").

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). Because the Superior Court's October 29, 2009 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over Francis's appeal.[2] *See, e.g., Browne v. People*, 56 V.I. 207, 216 (V.I. 2012) (in a criminal case, written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's factual findings are only reviewed for clear error. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Nevertheless, when a criminal defendant fails to object to a Superior Court decision or order, this Court ordinarily only reviews for plain error, provided that the challenge has been forfeited rather than waived. *Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). For this Court to reverse the Superior Court under

---

[2] In its brief, the People contend that this Court lacks jurisdiction over Francis's appeal because the Superior Court denied his motion for a new trial on October 6, 2009 and Francis filed his notice of appeal on October 26, 2009. As a threshold matter, it is well established that, because the requirement that a notice of appeal be timely filed is set by court rule rather than statute, it is a claims processing rule, and thus has no impact on this Court's jurisdiction. *See Vazquez v. Vazquez*, 54 V.I. 485, 489-90 (V.I. 2010). However, as noted above, this Court — with limited exceptions not pertinent to this appeal — only possesses jurisdiction over final judgments, and a final judgment in this matter was not entered until October 29, 2009.

the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). However, even "[i]f all three conditions are met," this Court may reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 390-91.

### B. The Evidence is Sufficient to Sustain Francis's Convictions

█ Francis, as one of several issues raised in his appellate brief, argues that there was insufficient evidence to support his convictions. In *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009), we restated the standard by which this Court reviews a challenge to the sufficiency of the evidence leading to conviction:

> "When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). The appellate court "must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence." *Id.* This evidence "does not need to be inconsistent with every conclusion save that of guilt" in order to sustain the verdict. *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957) (citing *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), *rehearing denied* 348 U.S. 932, 75 S. Ct. 334, 99 L. Ed. 731 (1955)). An appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears "a very heavy burden." *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982).

█ In Count I of the Amended Information, the People charged Francis with aggravated rape in the first degree, in connection with domestic violence, in violation of 14 V.I.C. § 1701(3) and 16 V.I.C. § 91(b)(6).[3] Title 14, section 1701 provides, in relevant part, that

---

[3] Domestic violence encompasses rape when the victim and the perpetrator are or were in a sexual or intimate relationship. *See* 16 V.I.C. § 91(b)(6); 16 V.I.C. § 91(c). S.A.J. testified that

[w]hoever perpetrates an act of sexual intercourse[4] or sodomy with a person . . . when the person's resistance is prevented by fear of immediate and great bodily harm which the person has reasonable cause to believe will be inflicted upon the person . . . is guilty of rape in the first degree.

14 V.I.C. § 1701(3). Additionally, "[w]hoever uses a deadly weapon during the commission of an act of rape as set forth in section 1701 is guilty of aggravated rape in the first degree." 14 V.I.C. § 1700(c). S.A.J. testified that Francis inserted a broomstick into her vagina against her will and that she heard a knocking sound as the broomstick was repeatedly moved back and forth. A broomstick collected by the VIPD from S.A.J.'s apartment was tested by the FBI and traces of semen and S.A.J.'s DNA were found thereon. S.A.J.'s pelvic exam revealed some irritation and redness in the vagina, although no vaginal tears were found. S.A.J. also testified that Francis choked her, slapped her, forced her to drink cleaning agents and put a knife to her chest and neck all before inserting the broomstick into her vagina over the course of the early morning hours of March 4, 2008. She stated that she believed she was going to die that morning. S.A.J.'s testimony is probative evidence of a sexual intercourse perpetrated while her resistance was prevented by fear of "immediate and great bodily harm." Her testimony is also probative evidence that her fear was reasonable.

■ Francis argues that "[o]ther than the self-serving statements of the victim there is no physical evidence to link [Francis] to the alleged offense described in Count I." Assuming without deciding that Francis's contention is accurate, the absence of physical evidence to corroborate S.A.J.'s testimony does not in and of itself, render S.A.J.'s testimony insufficient to sustain a conviction for aggravated rape in the first degree. *See* 29A Am.Jur.2d *Evidence* § 1363 ("The testimony of one witness is sufficient to prove any fact. . . . [A] conviction may be sustained on the testimony of a single witness or victim, even when other witnesses may testify to the contrary.") (collecting cases); *Dunlop v. People*, S.Ct.

---

she had a four year relationship with Francis and in Francis's statement to the VIPD, he also acknowledged their relationship. Therefore, S.A.J. would be properly considered a victim of domestic violence if the People proved she was raped.

[4] Sexual intercourse is defined as "vaginal intercourse or any insertion, however slight, of a hand, finger or object into the vagina, vulva, or labia, excluding such insertion for medical treatment or examination." 14 V.I.C. § 1699(d).

Crim. No. 2008-0037, 2009 V.I. Supreme LEXIS 41, at *12 (V.I. Sept. 15, 2009) (unpublished) (quality of testimony — not number of witnesses — is controlling). Moreover, we note that no male profile could be constructed from the semen samples that were retrieved from the broomstick and the vaginal swabs; in other words, the semen samples neither identify nor exclude Francis as the individual from whom the semen originated.

■ Finally, Francis challenges the theory that the broomstick is a deadly weapon. In *Government of the Virgin Islands v. Robinson*, 29 F.3d 878, 886, 30 V.I. 428 (3d Cir. 1994), the court noted that

> A deadly weapon is one which, from the manner used, is calculated or likely to produce death or serious bodily injury. Thus whether a weapon is deadly depends upon two factors: (1) what it intrinsically is and (2) how it is used. If almost anyone can kill with it, it is a deadly weapon when used in a manner calculated to kill. Thus the following items have been held to be deadly weapons in view of the circumstances of their use: . . . iron bars, baseball bats, bricks, rocks, ice picks, automobiles, and pistols used as bludgeons.

Although such an item is not necessarily used as a deadly weapon in normal circumstances, we find that a rational jury could have determined that a broomstick, inserted into S.A.J.'s vagina by Francis causing S.A.J. to hear a knocking sound, fear damage, and writhe from left to right, constituted a deadly weapon in this particular case.

Because S.A.J.'s testimony provides probative evidence with respect to all the elements of aggravated rape in the first degree and because there is minimal evidence that directly contradicts her testimony, with the exception of Francis's statement given to the VIPD,[5] a jury could find Francis guilty beyond a reasonable doubt on Count I. Accordingly, we affirm that conviction.

■ In Count II of the Amended Information, Francis was charged with assault in the third degree, in connection with domestic violence, in

---

[5] In his statement given to the VIPD, Francis claims that he went to S.A.J.'s house shortly before bringing her to the hospital after a failed suicide attempt on her part.

violation of 14 V.I.C. § 297(4) and 16 V.I.C. §§ 91(b)(1)-(b)(2).[6] Title 14, section 297 provides, in relevant part, that "[w]hoever, under circumstances not amounting to an assault in the first or second degree — assaults another and inflicts serious bodily injury upon the person assaulted" commits assault in the third degree. 14 V.I.C. § 297(3). S.A.J. testified that Francis forced her to drink household cleaners by clutching her hair, pulling her head backwards and pouring a cup of bleach and/or pine sol into her mouth while she was either on the couch or kneeling on the carpet in the living room. S.A.J. also testified that she ingested as little of the cleaning agents as possible and attempted to let most of the liquid drain out of her mouth discreetly. According to the doctor, the medical records, and S.A.J.'s testimony, S.A.J.'s lips were swollen and she had chemical burns both on her lips and chin.

■ As noted by Francis, there were no fingerprints or DNA evidence adduced at trial that proved that Francis held the bleach or pine sol bottles. First, "the implication that a lack of physical evidence tying [Francis] to the charged offenses, without more, renders the evidence insufficient 'is in direct contradiction to the standard of review for evaluating the sufficiency of the evidence.' " *Fontaine v. People*, 56 V.I. 571, 584 (V.I. 2012) (quoting *Augustine v. People*, 55 V.I. 678, 684 (V.I. 2011)). However, Debra Mahoney, a forensic technician, testified that rough surfaces with grooves, like a Clorox bottle, make it more difficult to obtain fingerprints. With this in mind, along with S.A.J.'s testimony, a jury could find Francis guilty beyond a reasonable doubt on this count as well..

■ Likewise, we find that the evidence is also sufficient to allow a rational factfinder to find Francis guilty of the third and fourth counts of the Amended Information. Count III of the Amended Information charged Francis with assault in the third degree, in connection with domestic violence, in violation of 14 V.I.C. § 297(2) and 16 V.I.C. § 91(b)(1). Title 14, section 297 provides, in relevant part, that "[w]hoever, under circumstances not amounting to an assault in the first or second degree . . . assaults another with a deadly weapon" commits assault in the third degree. 14 V.I.C. § 297(2). Count IV of the Amended Information charges

---

[6] Domestic violence encompasses assault and battery when the victim and the perpetrator are or were in a sexual or intimate relationship. *See* 16 V.I.C. §§ 91(b)(1)-(b)(2); 16 V.I.C. § 91(c).

213

Francis with unlawful use of a dangerous weapon during the commission of a crime of violence, in violation of 14 V.I.C. § 2251(a)(2)(B). Title 14, section 2251 provides, in relevant part, that

> [w]hoever . . . with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a . . . dangerous knife . . . or any other dangerous or deadly weapon shall — if he . . . carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence (as defined in section 2253(d)(1) hereof)[7] shall be fined $10,000 and imprisoned not more than fifteen (15) years, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

14 V.I.C. § 2251(a)(2)(B). Both Counts III and IV rely on a kitchen knife retrieved from S.A.J.'s apartment. S.A.J. testified that Francis held the knife to her throat and told her to "drink [the bleach] or else I'll cut you." (App. 83.) According to S.A.J., later that morning, when Francis told her to write him a check for $1000 and he noticed that she had not signed the instrument properly, he put the knife to her left breast and stated, "I'm serious. I ain't playing with you give me the correct signature. I know your signature." (App. 93.) S.A.J. also testified that Francis grabbed her by her arm, walked her to her front door with the knife to her throat, and told her to get rid of her brother who had arrived to drive her to work. This portion of S.A.J.'s testimony is sufficient evidence to support a conviction based on both the 14 V.I.C. § 297(2) and 14 V.I.C. § 2251(a)(2)(B) violations.

Finally, Count V of the Amended Information charged Francis with assault in the third degree, in connection with domestic violence, in violation of 14 V.I.C. § 297(2) and 16 V.I.C. §§ 91(b)(1)-(b)(2). S.A.J. testified that Francis placed three plastic bags over her head so that she could not breathe, one by one after she successfully poked a hole in each. S.A.J. testified that she momentarily blacked out after the second bag was placed over her head. Also, she stated that she was unable to poke a hole in the third bag due to weakness but that Francis removed that bag

---

[7] Assault in the third degree is a crime of violence pursuant to title 14, § 2253(d)(1), which utilizes the same definition found in title 23, § 451(e).

after noticing that she was limp.[8] Here, S.A.J.'s testimony is sufficient evidence to support a conviction on the charge of third degree assault, in connection with domestic violence, in violation of 14 V.I.C. § 297(2) and 16 V.I.C. §§ 91(b)(1)-(b)(2). Therefore, we find that the People introduced evidence that, when viewed in the light most favorable to the People, was sufficient so sustain all five of Francis's convictions.

## C. The Superior Court Erred When it *Sua Sponte* Struck Francis's Alibi Witnesses

Francis, as alternate grounds for reversal, renews his argument that Attorney Smith provided him with ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense,"[9] and alleges that the Superior Court deprived him of his right to present a defense in violation of the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment. In particular, Francis argues that, among other things, Attorney Smith's failure to submit the notice of alibi required by Federal Rule of Criminal Procedure 12.1 fell below an objective standard of reasonableness, that the outcome of his trial may have been different had his alibi witnesses been permitted to testify, and that the Superior Court acted arbitrarily or disproportionately by striking Francis's only witnesses.

While Francis frames his argument in constitutional terms, neither he nor the People address the baseline issue of whether the Superior Court correctly applied Rule 12.1 to this case. However, courts possess an "obligation . . . to avoid deciding constitutional issues needlessly." *Christopher v. Harbury*, 536 U.S. 403, 417, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). Since the Superior Court violated Rule 12.1

---

[8] Given the inherent danger of asphyxiation, a rational jury could find that the plastic bag was a deadly weapon. *See Robinson*, 29 F.3d at 886.

[9] The Sixth Amendment and the Due Process Clause of the Fourteenth Amendment are applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act. *See* The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86 (1995) (preceding V.I. CODE ANN. tit. 1) ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands . . . the first to ninth amendments inclusive; . . . the second sentence of section 1 of the fourteenth amendment. . . .").

 

when it prevented Francis's only witnesses from testifying, and its error warrants a new trial, we need not address Francis's constitutional arguments as part of this appeal. *See Farrell v. People*, 54 V.I. 600, 615-16 (V.I. 2011) (addressing whether Superior Court was permitted to take judicial notice to admit medical report into evidence instead of appellant's constitutional argument that admission of report violated the Confrontation Clause).[10]

---

[10] The dissent, citing primarily to civil cases, contends that this Court has "held at numerous times that issues raised on appeal that are not briefed are deemed waived," and that we should not review the propriety of the Superior Court's exclusion sanction *sua sponte*. First, we note that Francis does argue in his brief that the Superior Court erred when it prevented his witnesses from testifying at trial. While Francis does frame this argument solely in constitutional terms, we expressly held in *Farrell* that, if a defendant raises a constitutional challenge to an evidentiary decision, this Court is permitted to review the correctness of the underlying evidentiary ruling and, if it warrants reversal under the plain error standard of review, reverse on that basis instead of needlessly reaching the constitutional issue. 54 V.I. at 616.

Nevertheless, even if Francis had never challenged, on any grounds, the Superior Court's decision to exclude his alibi witnesses, this Court has consistently held that, in a *criminal* case, it may notice any error *sua sponte*, provided that the error was forfeited rather than waived. *See Nicholas v. People*, 56 V.I. 718 (V.I. 2012); *Brown v. People*, 56 V.I. 695 (V.I. 2012); *Chinnery v. People*, 55 V.I. 508, 513 (V.I. 2011); *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011); *Francis*, 52 V.I. at 408 (Swan, J., dissenting) (advocating for *sua sponte* reversal of four counts based on issue not raised by appellant). *See also Madir v. Daniel*, 53 V.I. 623, 635 (V.I. 2010) (summarizing the differences between plain error review in criminal cases and civil cases). This Court has previously elaborated on the difference between a forfeiture and a waiver in a criminal case:

> "[W]hen a legal rule has been waived, an appeal based upon the nonadherence to that legal principle is precluded. If, however, the correct application of the rule merely was 'forfeited,' " then an appellate court may nevertheless review for plain error pursuant to Federal Rule of Criminal Procedure 52(b). *Gov't of the V.I. v. Rosa*, 399 F.3d 283, 290 (3d Cir. 2005). "Stated most simply, 'where there was forfeiture, we apply a plain error analysis; where there was waiver, we do not.' " *Id.* at 290-91 (quoting *United States v. Mitchell*, 85 F.3d 800, 807 (1st Cir. 1996)). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508 (1993) (citation omitted).

*Murrell v. People*, 54 V.I. 338, 361-62 (V.I. 2010). While at least one court has implied that an attorney may, in some circumstances, waive some portions of a defendant's right to put on a defense, *see United States v. Smith*, 308 F.3d 726, 743 (7th Cir. 2002) (noting that defendant may have waived, rather than forfeited, right to cross-examine certain witnesses due to attorney's consent to procedure proposed by trial judge), the record in this case clearly demonstrates that neither Attorney Smith nor Francis personally ever consented to Francis's alibi witnesses being excluded — on the contrary, Attorney Smith challenged the Superior

■

Below represents the entirety of Attorney Smith's direct examination of Gibson and the resulting striking of her testimony, as reflected in the trial transcript:

ATTORNEY SMITH: Good afternoon, Miss Gibson.

GIBSON: Good afternoon.

ATTORNEY SMITH: Could you please state your name for the record spelling your first and your last names.

GIBSON: My name is Tyshawna Gibson, T-Y-S-H-A-W-N-A G-I-B-S-O-N.

ATTORNEY SMITH: Okay. And where do you live, Miss Gibson?

GIBSON: Anna's Fancy 94-3.

ATTORNEY SMITH: And do you know Mr. Craig Francis?

GIBSON: Yes.

ATTORNEY SMITH: How do you know Mr. Francis?

GIBSON: Well, about two years ago he was dating my cousin.

ATTORNEY SMITH: And you met him at that time?

GIBSON: Yes.

ATTORNEY SMITH: Now, you are aware that Mr. Francis was arrested on March 4, 2008?

GIBSON: Yes.

ATTORNEY SMITH: What do you know about his whereabouts on that date?

GIBSON: On that day at about 7:00 or 8:00 — between 7:30/8:00 he came —

THE COURT: AM or PM?

GIBSON: AM. He came to take my brother to school.

THE COURT: Sidebar.

**[SIDEBAR CONFERENCE COMMENCES]**

THE COURT: Was this alibi?

ATTORNEY SMITH: No, because alibi is usually implying she can only account for his whereabouts for a particular amount of time. He was not with her for the entire time.

---

Court's decision by arguing, albeit unsuccessfully, that Gibson was not an alibi witness. (J.A. vol. I 443-45.) Therefore, since Francis forfeited — but did not waive — the correct application of Rule 12.1, this Court is permitted to review the issue for plain error.

THE COURT: Her testimony was that this was seven o'clock in the morning until eight o'clock.

[PEOPLE'S COUNSEL]: *That is a back door basis on hearsay. This is lack of foundation here that hasn't been established that this witness saw him*; she was with the brother or whatever it is she is testifying to.

THE COURT: She is saying he was with her or her brother at 7:00 in the morning? *Unless you gave them notice it can't come in.*

ATTORNEY SMITH: So you're suggesting — Your Honor, this is the point that we're making, and I would abide by whatever ruling the Court make. What alibi witness as I understand it is, if he — I'm saying that he was not told to be somewhere else. Mr. Francis is not denying that he took [S.A.J.] to the hospital.

THE COURT: That's Alibi. That's alibi. They have been alleging he has been with her from three o'clock in the morning up through the time that he took her to the hospital. It's alibi. It's alibi.

ATTORNEY SMITH: Okay.

THE COURT: Is there anything else, counsel, she is to be testifying about?

ATTORNEY SMITH: No, just his whereabouts prior to.

**[SIDEBAR CONFERENCE ENDS]**

THE COURT: Okay, Miss Gibson's testimony is stricken in total. You're excused. You may step down.

(J.A. vol. I 443-45 (emphases added).) The above exchange illustrates two errors by the Superior Court. First, it is readily apparent that the People never objected to Gibson's testimony on the basis that Attorney Smith failed to provide notice pursuant to Rule 12.1, but only objected on hearsay and lack of foundation. Rather, the Superior Court invoked the protections of Rule 12.1 *sua sponte* on the People's behalf. Second, the Superior Court imposed a *per se* sanction of exclusion of evidence, in violation of the plain text of Rule 12.1 and United States Supreme Court precedent.

 Federal appellate courts, relying upon Rule 12.1's advisory committee notes, have consistently held that the purpose of Rule 12.1's disclosure requirement is to reduce prejudice to the opposing party by preventing unfair surprise at trial. *See, e.g., United States v. Carter*, 756 F.2d 310, 311-12 (3d Cir. 1985) ("The primary purpose of Rule 12.1 is clearly to prevent surprise at trial."); *United States v. Myers*, 550 F.2d

218

1036, 1042 (5th Cir. 1977) ("Rule 12.1 was intended to prevent prejudicial surprise to the parties and to obviate the need for continuances which arise when one side introduces unexpected testimony at trial.") (citing FED. R. CRIM. P. 12.1 Advisory Committee Notes and *Williams v. Florida*, 399 U.S. 78, 82, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970)). Importantly, the requirement that a criminal defendant submit a notice of alibi under Rule 12.1 "was designed to be a prosecution-triggered device for the primary benefit of the government." *United States v. Moore*, 917 F.2d 215, 221 (6th Cir. 1990) (citing *United States v. Bouye*, 688 F.2d 471, 473 (7th Cir. 1982)). Significantly, Rule 12.1 is not a rule of evidence, and thus when a party fails to timely file a notice of alibi, any decision to exclude a witness's testimony on that basis represents a discovery sanction rather than a holding that the evidence is inadmissible. *See, e.g., United States v. Levy-Cordero*, 67 F.3d 1002, 1015 (1st Cir. 1995) ("Exclusion of potentially exculpatory alibi evidence is the most severe of discovery sanctions."). Thus, although a judge may enforce rules that govern the admissibility of evidence even in the absence of an objection, rules whose purpose is simply to protect the rights of a specific party — such as ensuring that the party has sufficient notice — may be waived if that party fails to lodge a timely objection.[11] *See, e.g., United States v. Vela*, 673 F.2d 86, 89 (5th Cir. 1982) (defendant waived protection of Rule 12.1 by failing to object to testimony of prosecution's undisclosed alibi rebuttal witnesses); *State v. Graff*, No. A-00-475, 2001 Neb. App. LEXIS 69, at *17 (Neb. Ct. App. 2001) (unpublished) (government waived notice of alibi requirement by failing to object to defendant's undisclosed alibi witness); *cf. Gov't of the V.I. v. Martinez*, 620 F.3d 321, 328-29, 54 V.I. 900 (3d Cir. 2010) (appellate court erred in

---

[11] The dissent cites to *Hudson v. Curtin*, 371 Fed. Appx. 607, 611 (6th Cir. 2010) (unpublished), for the proposition that a trial judge possesses "responsibility for ensuring a fair trial and preserving the integrity of the proceedings in her courtroom" which "extends beyond the wishes and motions of the litigants." However, *Hudson* — an appeal of a denial of a petition for writ of habeas corpus — involved the exclusion of a videotape by a trial judge pursuant to a local rule of evidence, upon motion by the government over the defendant's objection. Thus, unlike this case, the trial judge in *Hudson* did not act *sua sponte*. Moreover, as this Court has previously recognized, the Superior Court possesses considerable discretion over how evidence is presented, including the ability to enforce certain evidentiary rules *sua sponte. See Fontaine*, 56 V.I. at 593 (citing chapter 65 of title 5 of the Virgin Islands Code). Rule 12.1, however, is not a rule of evidence, but — as the dissent acknowledges — a discovery rule intended to reduce unfair prejudice.

*sua sponte* dismissing appeal as untimely because government forfeited protection of court rule requiring timely filing of notice of appeal by failing to raise issue with court). Therefore, because the People never objected to Gibson's testimony on the basis of Attorney Smith's failure to timely file the notice of alibi required by Rule 12.1, but solely challenged Gibson's testimony on hearsay and lack of foundation grounds, the Superior Court erred in *sua sponte* invoking Rule 12.1 on the People's behalf.

▮▮ Moreover, even if the Superior Court could have properly raised Attorney Smith's failure to comply with Rule 12.1, the Superior Court's statement that "[u]nless you gave them notice it can't come in," (J.A. vol. I 445), is wholly inconsistent with the text of Rule 12.1 and with how it has been interpreted by the United States Supreme Court. Notably, Rule 12.1 provides, by its own terms, that "[i]f a party fails to comply with this rule, the court *may* exclude the testimony of any undisclosed witness regarding the defendant's alibi." FED. R. CRIM. P. 12.1(e) (emphasis added). *See Carter*, 756 F.2d at 311 ("[B]y providing that the trial court 'may exclude the testimony' . . . if there is a failure to comply with [Rule 12.1, the plain language of the Rule] clearly leaves the question of whether to exclude the evidence to the trial court's discretion.") (emphasis omitted). Likewise, the United States Supreme Court has addressed the issue of what factors should guide a court's exercise of its discretion to exclude a defendant's alibi witness as a sanction for violating a court rule requiring a notice of alibi. Specifically, it found that a trial court, when making this determination, is required to balance "the defendant's right to offer the testimony of witnesses in his favor" with "[t]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth determining function of the trial process. . . ." *Taylor v. Illinois*, 484 U.S. 400, 414-15, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). Thus, the Superior Court — contrary to its observations at trial — had the discretion to permit Gibson's testimony notwithstanding Attorney Smith's failure to comply with Rule 12.1,[12] and

---

[12] The dissent notes that "[t]he trial court indicated a number of potential ethical violations on the part of defense counsel such as the fact that she intentionally 'planted the seeds of

therefore erred by applying a *per se* exclusionary rule without making any attempt to apply the *Taylor* test.[13]

Ordinarily, the decision to exclude evidence as a sanction for a discovery violation is vested in the discretion of a trial court, and thus it is generally not appropriate for this Court to apply, on appeal, the balancing test that the trial court should have applied, but failed to do so. *See People v. Rodriguez*, S.Ct. Crim. No. 2009-0028, 2010 V.I. Supreme LEXIS 15, at *69 (V.I. Apr. 14, 2010) (unpublished). But "[a]pplication of the *Taylor* factors is a legal question which we review *de novo.*"

---

ineffective assistance of counsel' at numerous points during the criminal proceedings, and that she intentionally cloaked alibi witnesses under the guise of 'impeachment' witnesses to by-pass notice requirements," and that "the trial court found, based on defense counsel's conduct, that the failure to comply with alibi witness notice requirements were both willful and blatant." Ultimately, the dissent concludes that "[c]onsidering such blatant behavior by defense counsel, the trial court's *sua sponte* action in excluding Jones' and Gibson's testimony was warranted."

First, we find that this reasoning improperly conflates the issue of whether Attorney Smith provided ineffective assistance of counsel with the separate issue of whether the Superior Court misapplied Rule 12.1. However, even if the Superior Court were permitted to invoke Rule 12.1 *sua sponte* — which we do not hold — the dissent does not address that the Superior Court clearly failed to apply the balancing test mandated by *Taylor*. Importantly, the fact that the Superior Court attributed the non-compliance with Rule 12.1 solely to willful misconduct by Attorney Smith — as opposed to Francis himself — provides support for the proposition that the Superior Court erred by applying a *per se* exclusionary rule — a sanction which only served to punish Francis, rather than Attorney Smith — without considering alternate remedies, such as sanctioning Attorney Smith personally or referring her conduct to the Ethics and Grievance Committee of the Virgin Islands Bar Association for a full investigation. *See People v. Rodriguez*, S.Ct. Crim. No. 2009-0028, 2010 V.I. Supreme LEXIS 15, at *66 (V.I. Apr. 14, 2010) (unpublished).

[13] While it is not necessary, given our holding that Francis is entitled to a new trial due to the Superior Court's erroneous application of Rule 12.1, for us to reach the merits of Francis's ineffective assistance of counsel claim, we note that the Superior Court found in its October 6, 2009 Opinion that Attorney Smith "determined that [Francis] would be better served by foregoing filing a Notice of Alibi." 52 V.I. at 162. However, to defeat an ineffective assistance of counsel claim, counsel's conduct must not be merely strategic, but part of a sound strategy. *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005) (citing *Rice v. Marshall*, 816 F.2d 1126, 1132 (6th Cir. 1987)). Assuming without deciding that the Superior Court is correct that Attorney Smith's failure to comply with Rule 12.1 was a strategic decision, it would only represent a sound strategy if (1) the notice of alibi requirement in Rule 12.1 is subject to waiver by the People; and/or (2) the Superior Court possesses the discretion to impose a lesser sanction than exclusion for a violation of Rule 12.1. In other words, the Superior Court's holding that Attorney Smith acted strategically and that the strategy was sound cannot be reconciled with the Superior Court's apparent belief that it could invoke Rule 12.1 *sua sponte* and was mandated to apply a *per se* exclusionary rule.

*Levy-Cordero*, 67 F.3d at 1013. Based on the record before the Superior Court at the time it made its decision, the *Taylor* factors could not have justified exclusion as a sanction due to the absence of any indication that the People were prejudiced by Attorney's Smith non-disclosure, given that (1) Francis's alibi witnesses were both on the witness list submitted to the People prior to trial; and (2) the People's failure to object on notice of alibi grounds, which, on appeal, requires a presumption that the People were not prejudiced. *See Fendler v. Goldsmith*, 728 F.2d 1181, 1189 (9th Cir. 1983) (holding that any prejudice to the government was "not nearly substantial enough" to warrant excluding testimony when the defendant's list disclosing the witness's name omitted to include the address); *Vela*, 673 F.2d at 89 ("[T]he prosecution provided Vela with a list of its witnesses before trial. Vela has not alleged that the rebuttal witnesses' names did not appear on that list. Thus, Vela cannot claim prejudicial surprise from the appearance of those witnesses.").

 ██ Nevertheless, because Francis did not object to the Superior Court's application of Rule 12.1 and challenged the propriety of the Superior Court's actions in his appellate brief only on constitutional grounds, it is not sufficient for this Court to hold only that the Superior Court erred. Rather, this Court must also consider whether the error was plain and affected substantial rights. We hold that it does. As this Court has explained,

> " 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' " *Olano*, 507 U.S. at 734. Accordingly, the United States Supreme Court has directed that "[a]t a minimum, [a] court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Id.* Thus, "where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent . . . directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

*Murrell*, 54 V.I. at 366. While neither this Court, the United States Court of Appeals for the Third Circuit, nor the Appellate Division of the District Court has ever issued a decision stating that a trial judge is precluded from invoking Rule 12.1 *sua sponte*, this interpretation of the rule is readily apparent from the accompanying advisory committee notes. Moreover, the plain language of Rule 12.1(e), as well as the Third Circuit's decision in *Carter* and the United States Supreme Court's decision in *Taylor*, did clearly

establish that Rule 12.1 is not a *per se* exclusionary rule and that a trial court is required to balance several factors to decide whether a defendant's failure to timely file a notice of alibi justifies exclusion as a sanction. Therefore, the Superior Court's error was plain based on law that was already in effect at the time of Francis's trial.

██ ██ Likewise, we find that the Superior Court's error did affect Francis's substantial rights. It is well established that the right of a criminal defendant to present a defense is guaranteed by the Sixth Amendment of the United States Constitution, and thus represents a substantial right. *See Taylor*, 484 U.S. at 409 (quoting *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)). However, due to the Superior Court's error, Francis was forced to proceed without a defense, and — had Jones testified and Gibson been permitted to complete her testimony — the outcome of Francis's trial may have been different. Notably, although we conclude that the evidence introduced at trial, when viewed in the light most favorable to the People, was sufficient to sustain Francis's convictions, a jury does not apply such a deferential standard, but is expected to weigh the evidence, including judging the credibility of witnesses. Significantly, the evidence of Francis's guilt was far from overwhelming, given that S.A.J.'s testimony represented the sole evidence against Francis and was not completely corroborated by any physical evidence. Consequently, the Superior Court's error adversely impacted Francis's substantial rights because we cannot conclude with fair assurance that, after hearing testimony from Gibson and Jones placing Francis in a completely different part of St. Thomas on the morning of March 4, 2008, the outcome of the trial would have been the same. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946).

██ "Lastly, even when the first three *Olano* prongs have been satisfied, an appellate court may nevertheless not reverse a conviction based upon that error unless it also finds that 'the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Murrell*, 54 V.I. at 367 (quoting *Johnson*, 520 U.S. at 467). As noted above, the Superior Court's error essentially deprived Francis of the opportunity to present a defense, and thus affected the fairness of his trial. But in addition, we believe that the procedure employed in this case — *sua sponte* invocation of a rule whose protections had been waived by the prosecution, in order to strike the testimony of a criminal defendant's only

223

witnesses — may, if left uncorrected, adversely reflect on the public reputation of judicial proceedings. Therefore, this Court exercises its discretion to correct the Superior Court's error, and reverses the Superior Court's October 29, 2009 Judgment and Commitment.[14]

## III. CONCLUSION

Since the testimony of a single witness, if credited by the jury, is sufficient to sustain a conviction, we hold that the People introduced sufficient evidence at Francis's trial because, if the jury believed S.A.J.'s testimony, all elements of the charged offenses were met. We hold, however, that the Superior Court erred when it *sua sponte* invoked Rule 12.1 to exclude Francis's alibi witnesses without applying any balancing test, that the error was plain, that the jury may have reached a different outcome had Gibson and Jones been permitted to testify, and that the severity and nature of the error justifies correction. Accordingly, we reverse the October 29, 2009 Judgment and Commitment and remand the matter to the Superior Court so that Francis may receive a new trial consistent with this Opinion.

SWAN, *Associate Justice*, dissenting. Appellant was convicted of several felonies, including aggravated rape in the first degree and assault in the third degree. Appellant appealed his convictions, asserting several errors including the length of his sentence, ineffective assistance of counsel, and insufficient evidence to support his conviction. For the reasons elucidated below, I would affirm his convictions.

## I. FACTS AND PROCEDURAL HISTORY

Craig Francis and S.A.J. were in an intimate relationship for approximately four years, which ended in February 2008. (App. Vol. I at 63-64.) On March 3, 2008, S.A.J. was at her residence with her younger brothers. Later that day, she returned them to her mother's home. Upon her return to her apartment, a male friend visited with her until approximately 8:00 p.m., at which time the male friend departed. S.A.J. watched television until approximately midnight when she fell asleep in her living room. (*Id.* at 64-67.) Shortly after midnight, S.A.J. awoke to

---

[14] Given our decision to order a new trial, it is not necessary for this Court to consider any of the other issues Francis has raised as part of this appeal, such as his constitutional claims or his challenge to the sentence imposed by the Superior Court.

find a male on top of her, kissing her face and neck. The male was Francis, her former boyfriend. (*Id.* at 68.)

S.A.J. testified that for the next twelve hours or thereabout she was held captive in her apartment, while Francis viciously raped her, once with a condom and once without a condom. Additionally, Francis physically assaulted her and unrelentingly subjected her to other forms of despicable violence, while inflicting excruciating pain upon her. (*Id.* at 69-136.) S.A.J. testified that among his abhorrent and dastardly actions, Francis forced her to perform oral sex upon him. During the long hours of her ordeal, Francis mercilessly harassed her, including forcing S.A.J. at knife point to drink bleach, dishwashing liquid, and Pine-Sol[1] detergent, in his effort to stage her suicide. Despite her plea for mercy, Francis callously defiled S.A.J. with a broomstick which he forcibly inserted into her vaginal cavity. (*Id.* at 69, 76.) Fully cognizant of his sinister deeds, Francis continued his attempt to have S.A.J. stage her suicide by ordering her to slash her wrist with a razor he provided her. S.A.J. further testified that Francis provided a camcorder in order for S.A.J. to take nude photographs of herself. The nude photographs convey the impression that S.A.J. was distraught about something in her personal life prompting her to commit suicide. These horrific crimes by Francis commenced late into the night and continued into the morning hours. Encouraged by his demented mindset, Francis forced S.A.J. to write a suicide note.

Hoping to destroy evidence of his crimes, Francis ordered S.A.J. to shower after each time he raped her. During the morning hours, Francis instructed S.A.J. to telephone her place of employment, in his presence, and to inform her employer that she is unable to appear at her job, which would allay any suspicion from her employer about her absence.

Francis' brutish assault upon S.A.J. necessitated medical treatment for her injuries particularly the injuries to her face. Therefore, Francis transported S.A.J. to the Roy Lester Schneider Hospital ("Hospital"). S.A.J.'s first opportunity to receive assistance from her ordeal was at the Hospital, which she did while simultaneously informing the medical personnel that Francis was her assailant and the perpetrator of vicious crimes upon her. Francis was immediately arrested by police at the

---

[1] S.A.J. testified to being force-fed this particular brand name of pine-scented cleaning product.

Hospital. Importantly, unused condoms, razors and a camcorder were found in Francis' vehicle when he was arrested at the Hospital, while he was waiting for S.A.J. to complete her medical treatment at the emergency room. The unused condoms and camcorder would substantiate S.AJ.'s statement to police.

On November 14, 2008, Francis was charged in an Amended Information[2] with the following crimes: Count I, Aggravated Rape in the First Degree — Domestic Violence, in violation of title 14, sections 1700(c) and 1701(3), and title 16, section 91(b)(6) of the Virgin Islands Code; Count II, Assault in the Third Degree — Domestic Violence, in violation of title 14, section 297(3) and title 16, section 91(b)(1) and (2) of the Virgin Islands Code; Count III, Assault in the Third Degree — Domestic Violence, in violation of title 14, section 297(2) and title 16, section 91(b)(1) of the Virgin Islands Code; Count IV, Using a Dangerous Weapon During the Commission of a Crime of Violence, Assault in the Third Degree, in violation of title 14, section 2251(a)(2)(B); and Count V, Assault in the Third Degree — Domestic Violence, in violation of title 14, section 297(2) and title 16, section 91(b)(1) of the Virgin Islands Code.

The trial court appointed the Office of the Territorial Public Defender to represent Francis. The Office appeared in the person of Ariel Smith ("Smith" or "defense counsel"), to represent Francis during his criminal proceedings. Smith failed to meet often with Francis before trial. One of the reasons for Smith's failure to meet with Francis was his attempt to commit suicide while incarcerated, thereby causing his hospitalization and his inability to meet with Smith. (J.A. at 643). During one of Smith's few visits with Francis at the Bureau of Corrections, Francis became hostile towards Smith and yelled at her so loudly that a corrections officer had to intervene. (*Id.* at 645). Francis was extremely uncooperative with

---

[2] Numerous versions of an Amended Information are included in the trial record, none of which are appropriately labeled with the headings "First Amended Information", "Second Amended Information", etc. These additional Information charge Francis with up to seven separate offenses. The charges listed here are the ones listed in an Amended Information dated November 14, 2008, which is the latest dated Information in the trial record. It is also the Information that most corresponds to the jury verdicts in the trial transcript. This Information also charged Francis with a sixth count: Assault in the Third Degree — Domestic Violence, in violation of title 14, section 297(2) and title 16, section 91(b)(1), (2) of the Virgin Islands Code. This Count, however, seems to have been dropped at some point before the commencement of trial.

Smith and continually expressed his mistaken belief that Smith was working against him. (*Id.* at 646). Francis absolutely refused to answer any questions Smith asked him about the criminal charges, thereby deliberately and willfully impeding and obstructing all efforts by Smith to prepare her case or to advance a defense on Francis' behalf. The following is indicative of Francis' conduct: On one visit to Francis at the Bureau of Corrections, Smith was accompanied by Mr. Jackson,[3] the investigator from the Public Defender's Office. (*Id.* at 648.) Francis refused to cooperate with Mr. Jackson and in the investigation Mr. Jackson was conducting on his behalf. *Id.* Likewise, Francis refused to answer or respond to any questions Mr. Jackson asked of him, even though Jackson was attempting to assist Francis in formulating his defense of the criminal charges. (*Id.* at 648-9.) Francis assumed the role of the consummate obstructionist in Smith's and Jackson's efforts to prepare his defense and to prepare for trial. Smith stated that representing Francis was very difficult. (*Id.*) Notably, Francis was also hostile to another public defender who was appointed to represent him in an unrelated matter in 2005. (*Id.* at 647-8.)

Prior to commencement of the trial proceedings, Smith informed the trial court that Francis was "uncomfortable" with her representation and that he did not believe that Smith intended to represent him. (J.A. at 32.) Smith emphasized to the trial court that she wanted to make these sentiments known in case things "go south", and there was a need to file a claim of ineffective assistance of counsel. *Id.* Subsequently, Francis asked the trial court for a brief conference to afford him time to converse with Smith to "resolve [their] differences". (*Id.* at 33.) The trial court granted Francis' request, but admonished him by stating "[y]ou are not going to get a new attorney. Period." (*Id.* at 38). The case proceeded to trial and the People called numerous witnesses including S.A.J., police officials, several forensic technicians, and medical personnel.

After the People rested its case, Smith made an oral Rule 29 Motion for Judgment of Acquittal under the Federal Rules of Criminal Procedure, which the trial court denied. (*Id.* at 440-41.) After the Rule 29 Motion was denied, Smith immediately informed the trial court that she intended to call two witnesses: Tyshawna Gibson ("Gibson") and Sherisma Jones

---

[3] The record does not disclose Mr. Jackson's first name.

("Jones"). Smith had previously designated these witnesses as impeachment witnesses during a pretrial conference. (*Id.* at 14-15.) Gibson was called to testify first, and her testimony immediately endeavored to place Francis at an entirely different location from the scene of the crimes during the time of the crimes. (*Id.* at 443-44.) The trial judge immediately interrupted the testimony and called for a sidebar conference at which the judge asked Smith whether Gibson was providing alibi testimony. *Id.* Smith denied that Gibson's testimony was an alibi. Nonetheless, because the testimony, if allowed, would explicitly place Francis at a different location than at the scene of the crimes during the relevant time period, the trial court excluded Gibson's testimony as alibi testimony. (*Id.* at 444-45.) Importantly, Smith offered no other reason or purpose for Gibson's testimony other than to place Francis at a different location from the scene of the crimes. Shortly after the trial court rendered its decision on the alibi testimony and precluded Gibson and Jones from testifying because of Smith's failure to provide information on alibi witnesses to the People, consistent with FED. R. CRIM. P. 12.1, the defense rested its case without calling any further witnesses.

On November 19, 2008, a jury found Francis guilty of all five counts. Immediately following the announcement of the jury verdicts, and before departing the courtroom, Smith moved for a new trial based on ineffective assistance of counsel. (*Id.* at 621.) In a January 16, 2009 Order, the trial court scheduled an evidentiary hearing on the ineffective assistance of counsel claim and appointed a new attorney to represent Francis.

The Evidentiary Hearing was held on May 14th, 2008. At the hearing, Smith acknowledged that the People had served her with several requests for the notice of alibi as required by FED. R. CRIM P. 12.1, but that she did not respond to any of the People's requests because of her belief that Gibson and Jones were impeachment witnesses, rather than alibi witnesses. (See J.A. at 993). During the hearing, Smith was cross-examined about her years of legal experience and about other factors concerning her representation of Francis. The hearing confirmed that Smith had been practicing law in the Virgin Islands for over fifteen years and had been employed as a Territorial Public Defender for over twelve years. (*Id.* at 16-17.) During the course of her legal practice, Smith has handled "hundreds, probably close to thousands" of criminal matters including felony jury trials. (*Id.* at 17.) The trial court further heard testimony from several other witnesses. In an October 5, 2009

Memorandum Order, the Superior Court denied Francis' Motion for a New Trial on the basis of ineffective assistance of counsel. (*Id.* at 4-26.) Francis was sentenced to an aggregate of twenty-seven and one-half (27 & 1/2) years of imprisonment. This timely appeal ensued.

## II. JURISDICTION

This Court has jurisdiction over appeals from all final judgments, final decrees or final orders of the Superior Court. V.I. CODE ANN. tit. 4, § 32(a).

## III. ISSUES

Francis raises four issues on appeal, namely:

A. Whether the People presented sufficient evidence at trial to sustain Francis' convictions;

B. Whether the trial court correctly concluded that Francis had effective assistance of counsel during the trial proceedings;

C. Whether the trial court improperly denied the admission of testimony from Francis' proposed alibi witnesses who Smith designated as impeachment witnesses; and

D. Whether Francis' sentence is proportional within the meaning of the Eighth Amendment to the Constitution of the United States.

## IV. STANDARD OF REVIEW

In reviewing a sufficiency of the evidence claim, we apply a "particularly deferential standard of review." *United States v. Bansal*, 663 F.3d 634, 665 (3d Cir. 2011). Accordingly, we must affirm a jury's verdict so long as substantial evidence exists to allow a rational trier of fact to convict when the evidence is viewed in a light most favorable to the government. *United States v. Wright*, 665 F.3d 560, 567 (3d Cir. 2012). An individual making a claim for ineffective assistance of counsel "must show deficient performance and prejudice." *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264, 176 L. Ed. 2d 1098 (2010).

We review a court's evidentiary rulings for abuse of discretion. *McNamara v. Kmart Corp.*, 380 Fed. Appx. 148, 151 (3d Cir. 2010) (citing *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009)) and *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

Similarly, we review the reasonableness of a sentence for abuse of discretion. *Tindell v. People of the Virgin Islands*, 56 V.I. 138, 145 (V.I. 2012) and *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011).

## V. DISCUSSION

### A. The evidence was sufficient to convict Francis of the offenses for which he was charged.

Francis asserts that the evidence adduced at trial was insufficient to convict him of the crimes for which he was charged; he claims that for this reason his convictions are invalid and must be vacated. He was convicted of one count of aggravated rape in the first degree in connection with an act of domestic violence; one count of third degree assault in connection with an act of domestic violence; two counts of third degree assault with a deadly weapon in connection with an act of domestic violence, and one count of using a dangerous weapon during the commission of a crime of violence. (J.A. at 616-19).

Francis faults the jury for relying solely on the testimony of S.A.J., the victim and sole eyewitness to Francis' criminal conduct, in arriving at its verdicts. In making this claim, Francis is urging this Court to conclude that the evidence in the case weighed more in favor of an acquittal than a conviction and to conclude that S.A.J.'s testimony was not credible. Francis conveniently ignores and overlooks other evidence at the trial which corroborates S.A.J.'s testimony. Further, Francis ignores the fact that we are not empowered to usurp the responsibilities or province of the jury by re-analyzing the evidence presented at trial, by determining whether the facts were weighed correctly, or by determining the credibility of the witnesses. *See United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) and *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009).

In *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009) we explicated the principles by which this Court reviews challenges to the sufficiency of the evidence:

> "When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942)). The

230

appellate court "must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence." *Id.* This evidence "does not need to be inconsistent with every conclusion save that of guilt" in order to sustain the verdict. *United States v. Allard,* 240 F.2d 840, 841 (3d Cir. 1957) (citing *Holland v. United States,* 348 U.S. 121, 75 S. Ct. 127, 99 L. Ed. 150 (1954), *rehearing denied,* 348 U.S. 932, 75 S. Ct. 334, 99 L. Ed. 731 (1955)). An appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears "a very heavy burden." *United States v. Losada,* 674 F.2d 167, 173 (2d Cir. 1982).

Considering the above principles, I conclude that the evidence adduced at trial was substantial and sufficient for a reasonable trier of fact to find Francis guilty beyond a reasonable doubt.

In Count I of the Amended Information, Francis was charged with first degree aggravated rape in connection with an act of domestic violence for sexually violating S.A.J. with a broomstick in violation of 14 V.I.C. § 1700(c) and 1701(3). Title 14, § 1701(3) of the Virgin Islands Code defines rape in pertinent part as "an act of sexual intercourse or sodomy with a person [whose] resistance is prevented by fear of immediate and great bodily harm which the person has reasonable cause to believe will be inflicted upon the person." Title 14, § 1700(c) of the Virgin Islands Code defines aggravated rape in the first degree as the "use[] [of] a deadly weapon during the commission of an act of rape as set forth in section 1701." Francis claims that the quantity of evidence came from one individual and without corroboration.

Francis further claims that the evidence is not sufficient to convict him of first degree aggravated rape because S.A.J. admitted to the police that she had sexual intercourse with another individual earlier in the evening prior to Francis' attack upon her. Francis emphasized that no DNA evidence exists to implicate him in the crimes. Francis is reminded that long before the advent of DNA evidence, defendants were convicted of sex crimes. Moreover, it is not surprising that no DNA evidence was recovered linking Francis to the crimes. Francis conveniently ignores S.A.J.'s testimony that after he had raped her, one time utilizing a condom, Francis forced S.A.J. to take a shower each time, while continuing his threats to inflict punishment upon her. Obviously, the

231

showers and the condom were efforts to destroy any residual DNA evidence from the rapes. Therefore, Francis' claims of the lack of DNA evidence are disingenuous.

Importantly, under Virgin Islands law, intercourse is defined as including "any insertion, however slight, of a hand, finger or object into the vagina, vulva, or labia, excluding such insertion for medical treatment or examinations." 14 V.I.C. § 1699(d). S.A.J. testified that Francis raped her twice by forcibly using his genitals and a third time by viciously and brutally inserting a broomstick into her vagina. (J.A. at 114-17.) S.A.J. further testified that she objected to Francis having any form of intercourse with her. *Id.* S.A.J. stated that she cried to Francis to stop his criminal and dastardly acts because he was hurting her. Undeniably, S.A.J.'s testimony satisfied the elements of first degree aggravated rape in establishing that Francis forcibly and sadistically had sexual intercourse with S.A.J., including using a broomstick. S.A.J. testified that her ability to offer any substantial resistance to Francis' vicious sexual attacks was significantly reduced because of the series of unrelenting and vicious attacks Francis committed upon her immediately prior to the rapes. These attacks included choking S.A.J., physically beating her, forcing her to perform fellatio, and forcing her to drink a cocktail of liquids which included dish-washing liquids, bleach, and Pine-Sol detergent.

Francis contends that the jury should not have accorded much weight to S.A.J.'s testimony because it is "self-serving." However, Francis' contention is rejected by established legal precedent in this jurisdiction that states "a rape victim's testimony is sufficient evidence on which a guilty verdict may be based, and the absence of corroborative evidence does not preclude conviction." *Castillo v. Government of the V.I.*, 48 V.I. 519, 526 (D.V.I. App. Div. 2006). Consequently, Francis' assertion is meritless. Moreover, it is common knowledge that rapists usually do not commit their crimes in the presence of eyewitnesses other than the victims. Therefore, the prosecutor, as in other cases, would rely upon medical evidence, as here, and whether S.A.J. had an opportunity between the time when the crimes ended and her statements to police and to the medical personnel at the Hospital's emergency room to fabricate her statements.

Accordingly, even if we assume that Francis' contention of no corroborating evidence is correct, S.A.J.'s testimony is sufficient for a reasonable trier of fact to find Francis guilty of first degree aggravated

rape beyond a reasonable doubt. *See Lewis v. Gov't of the V.I.*, 77 F. Supp. 2d 681, 684, 42 V.I. 175 (D.V.I. App. Div. 1999) (finding that the evidence was substantial enough to sustain appellant's rape conviction based on the victim's testimony despite the absence of medical evidence of forcible penetration or DNA evidence) and *Edwards v. Gov't of V.I.*, 47 V.I. 605, 612-14 (D.V.I. App. Div. 2005) (holding that a child victim's testimony was sufficient to uphold rape conviction where there was no medical evidence directly linking the appellant to the crime). Lastly, Francis conveniently overlooks the issue of the victim's credibility. If the jury finds the victim to be a credible witness, convictions are almost a guaranty.

I conclude that there was additional evidence presented at trial, which was consistent with S.A.J.'s testimony, from which a reasonable trier of fact could find Francis' guilt beyond a reasonable doubt. For instance, S.A.J.'s vagina was red and irritated at the time of her medical examination and evaluation at the Hospital immediately following Francis' assault upon her. Additionally, at the Hospital, condoms, razors, and a camcorder were found in Francis' vehicle, which matched the objects S.A.J. described to police that Francis had used in committing the crimes upon her.

While Francis' assertion that no semen sample matching his DNA was found on the broomstick and vaginal swabs, the semen samples retrieved from the crime scene neither identified nor excluded Francis as the perpetrator. Further, the use of a condom during one of the rapes and his forcing of S.A.J. to take a shower after each episode of rape he committed probably accounted for the lack of Francis' semen on the vaginal swabs.

Further, whether S.A.J. had consensual sex with another male earlier in the evening of Francis' sexual assault upon her is inconsequential and has no relevancy to the issues here, which involve Francis' presence in S.A.J.'s home, and the sexual assault he committed upon her later the same night and early the following morning. S.A.J.'s testimony establishes all the elements of the offense charged in Count I. The testimony elicited at trial confirms that Francis penetrated S.A.J.'s vagina against her will with a broomstick, that S.A.J.'s attempts to prevent the rape were severely undermined by Francis' assaults upon her and by her fear of bodily harm which was imminent based upon the attacks that Francis had already perpetrated upon S.A.J. In his opportunistic and exploitive mindset, Francis took advantage of the circumstance that only

he and S.A.J. were in the apartment, allowing him to inflict punishment upon a defenseless S.A.J. Consequently, I reject Francis' claim of insufficient evidence as to Count I.

Francis' claim of insufficient evidence concerning Counts II, III, and V of the Amended Information is also fallacious.[4] In Count II of the Amended Information, Francis is charged with assault in the third degree in connection with an act of domestic violence in violation of 14 V.I.C. § 297(3) and 16 V.I.C. § 91(b)(1) and (2) for forcing S.A.J. to drink bleach and Pine-Sol detergents. Counts III and V charge Francis with third degree assault in connection with two acts of domestic violence in violation of 14 V.I.C. § 297(2) and 16 V.I.C. § 91(b)(1), (2) for threatening S.A.J. with a knife and for holding a plastic bag over her head. Title 14, § 297(2) and (3) of the Virgin Islands Code criminalizes the act of "assault[ing] another person with a deadly weapon" or "assault[ing] another with premeditated design" and "by use of means calculated to inflict great bodily harm." Francis claims that his convictions for these offenses are invalid because there are no fingerprints or DNA evidence proving that he held the bleach or Pine-Sol bottles, and no bleach stains were found on S.A.J.'s clothing. (Br. of Appellant 27.) This contention is preposterous and ludicrous because Francis is insinuating that even if the prosecution has other evidence such as the testimony of the victim or an eyewitness, that such testimony must be totally ignored and discounted because no DNA or fingerprint evidence exists on certain objects at the crime scene. Francis further asserts that "there was no physical evidence to link [] Francis to a plastic bag that he allegedly held over [S.A.J.'s] head . . . for several minutes". *Id.* Again, Francis ignores the un-impeached testimony of S.A.J.

S.A.J. testified that Francis initially attempted to have her ingest the harmful liquids by holding a knife to her throat and demanding that she drink or else have her throat slit. S.A.J. refused to do as Francis demanded. (J.A. at 83-84). S.A.J. further testified that Francis held back her head and attempted to force feed her bleach and Pine-Sol detergent.

---

[4] Francis does not make a sufficiency of the evidence argument with regards to Count IV of the Amended Information which charges Francis with the unlawful use of a dangerous weapon during a crime of violence for threatening S.A.J. with a knife in violation of 14 V.I.C. § 297(2). Therefore, we do not address in detail the sufficiency of the evidence as to this Count.

Undeniably, Francis' actions are premeditated and "calculated to inflict great bodily harm." 14 V.I.C. § 297(3). S.A.J. testified that she was able to prevent much of the damage that could have resulted from her ingesting these chemicals, by closing her mouth, making fake swallowing noises, and allowing the concoction to run down her chin as Francis attempted to force feed her. (J.A. at 84-87.) S.A.J. did sustain injuries, which are substantiated by the medical evidence in that she suffered extreme swelling of the lips, a burned tongue, and chemical burns on the chin. (J.A. at 220).

S.A.J. further testified that Francis held two plastic bags over her head in an attempt to asphyxiate her. (*Id.* at 120-122.) S.A.J. ripped a hole through both bags in an attempt to breathe. *Id.* Having failed in his effort to asphyxiate her with the plastic bags, Francis proceeded to choke her until she briefly lapsed into unconsciousness. (*Id.* at 123.) During his vicious attacks upon S.A.J., Francis made numerous disturbing comments to S.A.J., indicating his intent to inflict serious bodily harm upon her. For instance, while raping S.A.J. with the broomstick, Francis demanded of S.A.J. to "take hard wood," which is commensurate with his sadistic and demented mindset. (*Id.* at 116.) Immediately prior to force feeding S.A.J. with bleach and Pine-Sol, Francis repeatedly asked "you ain't dead yet [sic]?" as a means of taunting her. (*Id.* at 89.) In response to S.A.J. pleading for her life to be spared, Francis responded "you think you was thinking about my life when you leave me [sic]." (*Id.* at 120.) Therefore, considering the circumstances surrounding the crimes, it is plausible for a jury to conclude, based on the evidence, that Francis used the knife, the chemical concoction of liquids, and the plastic bags with the intent of inflicting great bodily harm upon S.A.J.

The lack of fingerprints on the bleach bottle does not exclude Francis as the perpetrator of these crimes where the testimony of S.A.J. confirms his criminality. Expert testimony informed that no fingerprints were lifted from the bleach and Pine-Sol bottles because these containers have rough surfaces with grooves which restrict fingerprinting. (J.A. at 305-307.) Importantly, S.A.J. related Francis' crimes against her the same day they were perpetrated and while she was still in a traumatic state and before she had the opportunity to ponder or ruminate upon the events in order to concoct a falsehood.

Moreover, Francis conveniently disregards the corroborative facts to S.A.J.'s testimony. First, S.A.J. received medical treatment at the Hospital

 

for her injuries on the same day Francis committed the vicious assaults upon her. Likewise, it was the same day that she identified Francis to the emergency room personnel as her assailant. Second, the police recovered from Francis' car, on the day of his crimes, items of unused condoms, a razor, and a camcorder, all of which support S.A.J.'s testimony that Francis' crimes utilized these items. Significantly, no one can plausibly argue that this is a case of mistaken identity, when S.A.J. and Francis had a protracted, intimate relationship and knew each other exceptionally well before Francis' criminal rampage. Moreover, during the long ordeal and with no evidence to the contrary, S.A.J. had ample opportunity to observe Francis, who made no effort to conceal his identity during the crimes.

Generally, "[t]he testimony of one witness is sufficient to prove any fact . . . . A conviction may be sustained on the testimony of a single witness or victim, even when other witnesses may testify to the contrary." 29A AM.JUR.2D *Evidence* § 1363. Further, "[t]he weight of the evidence is not determined by the number of witnesses who testify for either side, but the quality of their testimony." *Dunlop v. People*, S.Ct.Crim. No. 2008-0037, 2009 V.I. Supreme LEXIS 41, at *12 (V.I. Sept. 15, 2009) (quoting *United States v. Handy*, 454 F.2d 885, 888 (9th Cir. 1971)). Accordingly, S.A.J.'s testimony is sufficient to establish that Francis used the knife, the detergents, and the plastic bags in the manner alleged in Counts II, III, and V, especially considering the corroborating evidence underscored above.

Finally, Francis claims the evidence is insufficient to convict him because a plastic bag is not a deadly weapon within the meaning of 14 V.I.C. § 297(2). He asserts a similar argument in regards to his conviction on Count I, contending that a broomstick is not a "deadly weapon" even though he used it to commit the rape of S.A.J. in violation of 14 V.I.C. § 1700(c). However, Francis ignores the fact that it is not the traditional way in which an item is intended to be used that determines whether it is a deadly weapon, but rather the way the broomstick was used against S.A.J. In this case, Francis used the broomstick for the sole purpose of inflicting excruciating pain, suffering, and injury upon S.A.J. The common law prescribes that whether an "object" is a dangerous or deadly weapon depends on a number of factors including whether the object "is designed as a weapon and capable of producing death or great bodily harm"; whether the object is a "device or instrumentality, which, in the manner it is used or intended to be used, is likely to produce death or great

bodily harm"; or whether the "defendant had the apparent ability to injure the victim seriously by using the object." 6 AM. JUR. 2D *Assault and Battery* § 38 Factors Determining Whether Weapon is Dangerous.

Francis forcibly inserted the broomstick into S.A.J.'s vagina, causing her to hear a knocking sound, and prompting her fear of damage to her internal organs, and causing her to writhe from side to side. (J.A. at 116). He also held a plastic bag over S.A.J.'s head in an attempt to suffocate her and cause her death. The manner in which Francis used the broomstick and plastic bag were obviously not the use for which these items were created or the manner in which they were intended to be used. Francis is suggesting that an angry male brutally inserting a broomstick into a woman's vagina or holding a plastic bag over a woman's head will not cause great bodily harm. On the contrary, the evidence elicited demonstrated that Francis used these items for the sole purpose of inflicting great bodily harm upon S.A.J. in an attempt to punish and to kill her. The United States Court of Appeals for the Third Circuit has opined that:

> A deadly weapon is one which, from the manner used, is calculated or likely to produce death or serious bodily injury. Thus whether a weapon is deadly depends upon two factors: (1) what it intrinsically is and (2) how it is used. If almost anyone can kill with it, it is a deadly weapon when used in a manner calculated to kill. Thus the following items have been held to be deadly weapons in view of the circum- stances of their use: . . . iron bars, baseball bats, bricks, rocks, ice picks, automobiles, and pistols used as bludgeons.

*Government of the Virgin Islands v. Robinson*, 29 F.3d 878, 886, 30 V.I. 428 (3d Cir. 1994). Accordingly, although a broom and a plastic bag are not typically used to inflict great bodily harm, but because of the way in which Francis used these items against S.A.J., these items became deadly weapons capable of causing S.A.J.'s death and inflicting serious bodily injury upon her.

For these reasons, I conclude that the evidence elicited at trial was sufficient to convict Francis of all charges.

237

## B. The trial court's findings on ineffective assistance of counsel, based on the claim of ignorance of the law, were not erroneous.

Francis asserts that the assistance he received from trial counsel was ineffective and prejudicial to his defense on a number of grounds including his counsel's ignorance of the rules concerning alibi witnesses, her failure to investigate the case in a reasonable and timely manner, her failure to object to the admission of prejudicial evidence to wit; a knife, and her failure to raise his diminished mental capacity as a defense. (Br. of Appellant 9). Importantly, the only issue raised before the trial court during the May 14, 2009 Evidentiary Hearing on ineffective assistance of counsel was the claim of defense counsel's ignorance of the rules regarding alibi witnesses. (*See* J.A. at 4.)

Francis contends that his counsel was ineffective because of her failure to file a notice of alibi defense in accordance with FED. R. CRIM. P. 12.1. For the reasons which follow, I disagree and find no error in the trial court's findings on this issue. Francis claims that his defense counsel was woefully ignorant of the rules pertaining to alibi witnesses; therefore, her assistance fell below the Sixth Amendment requirements. The standards by which ineffective assistance of counsel claims are measured are found in *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) and *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009) which hold: (1) that counsel's performance must fall below an objective standard of reasonableness, and (2) that counsel's deficient performance must have prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome in the proceedings. Francis must show that "there is a reasonable probability that, but for counsel's *unprofessional errors*, the result of the proceeding would have been different". *Strickland*, 466 U.S. at 694 (emphasis added). In making a case for ineffective assistance of counsel, the defendant has the burden of overcoming the presumption that the allegedly defective performance was a part of sound trial strategy. *Strickland*, 466 U.S. at 689-90. Francis has failed to meet this burden as the record demonstrates that defense counsel made no "professional errors" in regards to the labeling of witnesses. Rather, counsel's actions were part of a reasoned and calculated trial strategy to win for Francis a second trial in the event he was found guilty of the charges, which was a foregone conclusion, if the jurors believed S.A.J.

In making a claim for ineffective assistance of counsel, Francis places much emphasis on his trial counsel's alleged misunderstanding of the court rules regarding alibi witness notice requirements, and how this misunderstanding underscores defense counsel's incompetence. However, Francis failed to mention in his brief the trial court's finding that defense counsel's labeling of "alibi" witnesses as "impeachment" witnesses was not because of a misunderstanding of court rules, but rather a trial strategy calculated to give Francis an unfair advantage over the Prosecution. Specifically, the trial court found that:

> there is little credence in the contention that trial defense counsel misunderstood the law with respect to alibi or alibi witnesses. Indeed, trial defense counsel's labeling of "alibi witnesses" as "impeachment witnesses" was a tactical decision to circumvent the notice requirement. This strategy conveniently relieved trial defense counsel from providing notice to the People of the substance of the witnesses' testimony and denied counsel for the People an opportunity to "check out" witnesses' intended testimony. As such, trial defense counsel's tactics created a "trial-by-ambush" situation that would permit potentially incredulous contentions to go "unchecked" and unchallenged by the prosecution.

(J.A. at 17.) It is an established principle in this circuit that informed strategic decisions of trial counsel cannot form the basis of an ineffective assistance of counsel challenge. *See Thomas v. Varner*, 428 F.3d 491, 500-01 (3d Cir. 2005) and *United States v. Pungitore*, 15 F.Supp.2d 705, 729 (E.D. Pa. 1998). Courts generally afford much deference to the tactical decisions of trial counsel even when such decisions prove unsuccessful. *See Government of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 33 V.I. 399 (3d Cir. 1996) (no prejudice found where defense counsel failed to move for a mistrial when he observed a juror entering the courtroom with a newspaper containing an article about the trial, because defense counsel wanted this juror empanelled based on his strategy to empanel as many white jurors as possible in an attempt to benefit a white defendant charged with murdering a black victim.) and *Floyd v. Hanks*, 364 F.3d 847, 851-52 (7th Cir. 2004) (holding that it was sound trial strategy and not unreasonable for defense counsel to have defendant's mother sit in courtroom in order to show family support as opposed to having her testify as an alibi witness, even though defense counsel later wished to call her as a witness). *See also United*

239

*States v. Holmes*, 409 Fed. Appx. 545 (3d Cir. 2010) (holding that a defendant was not prejudiced by counsel's tactical decision to concede defendant's guilt of conspiracy to possess firearm, in furtherance of a strategy to obtain a not guilty verdict on the more serious charge of conspiracy to distribute cocaine.) Witness selection is among the non-fundamental decisions that are exclusively reserved for counsel's judgment and which counsel are entitled to make at trial. *Weatherwax*, 77 F.3d at 1434. A court will usually not engage in second-guessing the tactical decisions of trial counsel in deciding whether to call certain witnesses on a defendant's behalf. *Id.*

In this case the decision to "mislabel" defense witnesses may have been the only course of action in obtaining a favorable outcome for Francis at trial. The trial court found that defense counsel's abilities to adequately represent Francis were severely hampered and obstructed by Francis who created a hostile relationship between him and defense counsel. (J.A. at 20.) Francis was belligerent with his counsel and refused to answer questions from her concerning the crimes with which he was charged. Defense counsel described Francis as "impossible to speak to." (*Id.* at 646.) In determining Francis' claim of ineffective assistance of counsel, I cannot overlook Francis' unwillingness to cooperate with his counsel, and defense counsel's attempt to consult with Francis in the presence of Mr. Jackson, an investigator with the public defender's office. (*Id.* at 648.) Even with the presence of Mr. Jackson, it was difficult and virtually impossible to obtain the necessary information from Francis, which was needed to prepare an adequate defense. (*Id.* at 649.) Francis refused to timely give his defense counsel vital information such as names of possible witnesses or an explanation as to what he was doing during the span of time that the crimes were committed. (*Id.* at 646.) The nature of the adversarial relationship between Francis and his defense counsel resulted in a complete lack of communication between them. (*Id.* at 677.) Francis' hostile behavior continued after trial commenced. Defense counsel testified that the tension between her and Francis was obvious even to the jury because of Francis' attitude towards her during trial. (*Id.* at 678.)

Francis' pattern of behavior demonstrates that he played a major role in inhibiting the effectiveness of his counsel's representation. Francis obstructed and impeded his counsel's efforts to formulate his defense, and because he was convicted, he is belatedly attempting to make a claim of ineffective assistance of counsel. A defendant's claim of ineffective

240

assistance of counsel is unfounded where the defendant's refusal to cooperate with his counsel results in his counsel's alleged deficient performance. *Sonnier v. Quarterman*, 476 F.3d 349, 362 n. 6 (5th Cir. 2007) (citing *Hall v. Washington*, 106 F.3d 742 (7th Cir. 1997)). *See also State v. McIntire*, 2010 Ohio 3955, ¶ 31 (Ohio App. 2010) (citing authority for "rejecting ineffective-assistance-of-counsel argument because defendant did not cooperate with trial counsel"); *Ghilarducci v. United States*, 2009 U.S. Dist. LEXIS 39818, at *18 (N.D. Ill. 2009) ("an obstinate client unwilling to cooperate with counsel's suggestions before the trial cannot assert an ineffective assistance of counsel argument afterward"); and *In re R.S.*, 2009 Tex. App. LEXIS 7632, at *17 (Tex. App. 2009) ("Appellant refused to cooperate with counsel and . . . thus, she should not benefit from a reversal based on counsel's actions at trial"). Francis should not be allowed to sabotage the efforts of his counsel to investigate his case and efforts to mount a defense and later claim ineffective assistance of counsel after he is convicted. To allow a defendant to consciously and deliberately obstruct his defense, and then prevail on a claim of ineffective assistance of counsel would be ludicrous, would be preposterous and would establish a disconcerting legal precedent not contemplated nor embedded in the Fifth Amendment. Furthermore, to allow Francis to prevail on this issue would be contrary to the principle we had previously highlighted that "a defendant cannot complain on appeal of alleged errors invited or induced by himself." *Latalladi*, 51 V.I. at 143-44 (citing *United States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993) (further citations omitted). Francis' behavior demonstrates that the mislabeling of the witnesses was not on account of ignorance of the rules governing alibi, but rather a deliberate strategy devised out of the limited assistance Francis gave his defense counsel in preparing an adequate defense. "If there was any error at all it was [induced] error and cannot now be a basis for reversal." *Id.*

Additionally, the labeling of defense counsel's strategy as ignorance of the rules of alibi witness is nonsensical and outlandish for the following reasons: unlike a neophyte defense counsel, defense counsel has been a public defender for many, many years prior to Francis' trial. She has tried countless felonies involving jury trials. Certainly, with her experienced trial portfolio, she knew the court rule mandated a notice requirement for alibi witnesses. Crucially, defense counsel conferred with her supervisor, Debra Watlington, the Chief Public Defender and veteran criminal

241

defense litigator, concerning labeling the witnesses as "impeachment". The trial court found that defense counsel's supervision from Watlington, coupled with defense counsel's twelve years of legal experience, further buttressed the implication that the alleged mislabeling of the witnesses was strategic and deliberate. (J.A. at 15-16.) Considering Smith's and Watlington's vast and extensive courtroom trial experience in criminal cases, it is undeniable that they have an intimate familiarity with rules of "alibi witnesses" including the notice requirement.

The trial court's findings demonstrate that Francis' defense counsel made a decision in regards to the labeling of the witnesses that she felt would be most beneficial to Francis' defense. In denying Francis' claim of ineffective assistance of counsel, the trial court stated that "in an effort to offer her client the 'best of both worlds', trial defense counsel made the tactical decision to mislabel 'alibi' witnesses as 'impeachment' witnesses and if that strategy failed, she would raise an ineffective assistance of counsel claim against herself." (J.A. at 18). More succinctly, the trial court found that Francis' defense counsel attempted to by-pass alibi witness notice requirements, and if that failed then she would raise an ineffective assistance of counsel claim in an attempt to secure a new trial for Francis. Because the trial court found that defense counsel's mislabeling of "alibi" witnesses as "impeachment" witnesses was not due to her misunderstanding or ignorance of court rules, but was a deliberate tactical decision made in the interest of giving Francis an advantage at trial, the mislabeling cannot form the basis of an ineffective assistance of counsel claim. Crucially, almost instantaneously after the jury verdicts were read and before defense counsel departed the courtroom, she invoked a claim of ineffective assistance of counsel, which speaks eloquently of a deliberate, alternative plan in the event that Francis was convicted.

Francis' additional claims of ineffective assistance of counsel also fail. Critically, Francis now raises, for the first time on appeal, three additional grounds alleging ineffective assistance of counsel that were never considered by the trial court at the Evidentiary Hearing. In effect, Francis urges us to overturn the October, 5 2009 Memorandum Order of the Superior Court, based on grounds which the trial court never had an opportunity to consider.

It is a well-established principle under common law to restrict appellate review of those issues not preserved at trial. *See Puckett v. United States*,

556 U.S. 129, 134-35, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009). *See also United States v. Vosburgh*, 602 F.3d 512, 531 (3d Cir. 2010). This principle prohibits the appellate review of an ineffective assistance of counsel claim on direct appeal, but is available in a collateral proceeding in order to develop the necessary facts pertaining to counsel's representation. *United States v. Jake*, 281 F.3d 123, 132 n.7 (3d Cir. 2002). "This practice stems from the reality that ineffective assistance of counsel claims frequently involve questions regarding conduct and strategy that occurred outside the purview of the trial court and therefore can be resolved only after a factual development at an evidentiary hearing." *Elmour v. Government of the Virgin Islands*, 2011 WL 98928 *5 (D.V.I. App. Div. 2011) (citing *United States v. Swinehart*, 617 F.2d 336 (3d Cir. 2004). None of the issues raised by Francis, except the alibi witness notice issue, was raised before the trial court in the collateral review.

Ordinarily, this Court does not review claims of ineffective assistance of counsel for the first time on direct appeal, and only accept such claims after they have been raised by a collateral proceeding where the necessary facts concerning counsel's representation would have been developed. *Corraspe v. People of the Virgin Islands*, 53 V.I. 470, 486 (V.I. 2010); *see also United States v. Haywood*, 155 F.3d 674, 678 (3d Cir. 1998). An exception to this general rule is recognized where the record before the court of review is adequately developed to support such claims or if dismissal of the claims would work a miscarriage of justice. *See Corraspe*, 53 V.I. at 486; *United States v. Anderson*, 570 F.3d 1025, 1032 n.4 (8th Cir. 2009). Unlike the circumstances in *Corraspe* where we exercised the exception to the general rule, the trial court afforded Francis a full evidentiary hearing where he had the opportunity to make his case for ineffective assistance of counsel based on the issues he propounded for the first time to this Court. I see no valid reason in the record which excuses Francis' failure to have raised in the trial court all the issues pertaining to ineffective assistance of counsel which he has propounded before us.

Further, I do not find the record sufficiently developed to allow a review of his additional issues, nor do I find that it would be a miscarriage of justice in declining to hear these subsequent issues, considering the sufficiency of the evidence in support of his convictions. Because of the development of the facts afforded by the evidentiary hearing, I am able to

243

review the trial court's rationale supporting the denial of Francis' claim for ineffective assistance of counsel based on the issue of alibi witness notice requirement, although Francis did not state the reasons for the trial court's analysis in his appeal. Without the benefit of an evidentiary hearing on the supplemental claims advanced by Francis, I am deprived of a basis in which to make a cogent analysis on Francis' additional issues. Francis' subsequent claims of ineffective assistance of counsel have not been denied by the trial court; therefore, there is no error for appellate review. *See Hennemeyer v. Commonwealth*, 580 S.W.2d 211, 216 (Ky. 1979) (holding that because issue of ineffective assistance of counsel was not presented to the trial court for consideration and denied, there was no error for appellate review); *United States v. Palmeri*, 630 F.2d 192, 201 (3d Cir. 1980) (a court of review should be hesitant in reversing a trial court for reasons not presented to it); *Dichner v. United States*, 348 F.2d 167, 168 (3d Cir. 1965) (holding that the presentation on appeal of issues not previously objected to "cast[s] unmerited reflections upon trial counsel"); and *Dearinger v. United States*, 344 F.2d 309, 313 (9th Cir. 1965) (where defendant's contention that he had not been represented by counsel during entire criminal proceedings had not been presented to trial court and rested on assertions made wholly outside of record, those contentions presented nothing to review).

The trial court arrived at its conclusion that the labeling of witnesses was based on trial strategy as opposed to ignorance of the court rules, after conducting a full evidentiary hearing in which numerous individuals were examined an cross-examined and where the facts were sufficiently developed. Moreover, after the development of the evidence at a hearing the trial court was able to evaluate facts in a way that an appellate court would not be able to do sufficiently without the benefit of such an evidentiary hearing. Consequently, I decline to consider Francis' three alternative claims of ineffective assistance of counsel.

### C. The trial court did not err in excluding witnesses' testimony because of failure to provide notice of alibi witness.

At trial, the court interrupted the testimony of Tyshawna Gibson, a witness for the defense, and struck her testimony from the record because of defense counsel's failure to comply with the alibi witness notice requirements. Francis claims that his constitutional right to present favorable witnesses at trial was violated when the trial court excluded his

244

witness's testimony. Defense counsel designated this witness as an impeachment witness, but because the witness's testimony attempted to place Francis at a different place other than the crime scene at the time of the crimes, the trial court ruled that Gibson was an alibi witness and excluded her testimony. The trial court further precluded Francis' next witness, Sherisma Jones, from testifying because her testimony would be similar to Gibson's testimony. I find that the trial court's prohibition of these witnesses from testifying was proper.

### 1. The exclusion of alibi witness testimony was proper

Francis asserts that although there was no compliance with the notice requirement, the testimony should have been allowed because the testimony was an essential component of his defense; therefore, the trial court's exclusion of this testimony deprived him of the opportunity to present a complete defense. Consequently, the exclusion of the testimony was in violation of the Due Process Clause of the Fourteenth Amendment. (Br. of Appellant 22.)

Rule 12.1 of the Federal Rules of Criminal Procedure imposes upon a defendant in criminal proceedings the requirement of giving notice of alibi witnesses, or risking exclusion of the witnesses' testimony.[5] If a party violates this notice requirement the decision to exclude witness testimony is solely within the discretion of the trial court.[6] *United States v. Carter*, 756 F.2d 310, 311 (3d Cir. 1985). Therefore, a trial court's decision to exclude alibi witness testimony is not absolutely barred by the Due Process clause. *See Taylor v. Illinois*, 484 U.S. 400, 410 & 415, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (rejecting the contention that exclusion of a witness as a sanction for failure to comply with notice requirements is always unconstitutional).

---

[5] This rule is applicable to the Virgin Islands Superior Court by virtue of SUPER. CT. R. 7 which states that:

> The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence.

[6] FED. R. CRIM. P., Rule 12.1 provides in relevant part:

> (e) Failure to Comply. If a party fails to comply with this Rule, the Court may exclude the testimony of any undisclosed witness regarding the defendant's alibi.

In determining whether the trial court properly excluded testimony because of a defendant's failure to comply with the alibi notice requirement, the United States Supreme Court has established factors that must be weighed including: "the fundamental character of the defendant's right to offer the testimony of witnesses in his favor", "[t]he integrity of the adversary process", "the interest in the fair and efficient administration of justice" and "the potential prejudice to the truth-determining function of the trial process." *Id.* at 414-15.

The alibi witness notice requirement is a necessary part of the discovery process "[g]iven the ease with which an alibi can be fabricated." *Williams v. Florida,* 399 U.S. 78, 81, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970). This notice requirement seeks to ensure the legitimate state interest of restraining criminal defendants from deliberately "conceal[ing] their cards until played." *Id.* at 81-82. Although the alibi notice requirement has been deemed constitutional, some courts are usually reluctant to impose the harsh sanction of exclusion for mere oversight of a court notice rule, as this might have negative implications on a defendant's due process right to present witnesses in his defense. *See Smith v. Perez,* 722 F.Supp.2d 356, 372 (W.D.N.Y. 2010). Importantly, a number of courts have held that absent a showing of willfulness, exclusion of a defense witness for failure to comply with a court rule mandating advance notice may implicate the compulsory process clause. *See Taylor,* 484 U.S. at 410-16; *Noble v. Kelly,* 246 F.3d 93, 98-99 (2d Cir. 2001); and *United States v. Henderson,* 241 F.3d 638, 650 (9th Cir. 2000).

In this case, the deliberate and calculated actions of the defense counsel were examined by the trial court. The trial court concluded that defense counsel proffered Jones and Gibson as witnesses after defense counsel abandoned her initial strategy of placing Francis at the scene of the crime to rescue S.A.J. from attempting suicide. (J.A. at 14.) Francis had initially informed the police that he had traveled to S.A.J.'s home in order to take her to the hospital after her failed attempt to commit suicide. *Id.* Defense counsel sought to use this defense at trial. Consequently, the People moved the trial court to admit prior bad acts Francis had committed upon S.A.J. in accordance with FED. R. EVID. 404(b).[7] The trial court ruled that the People may present these prior bad acts only if Francis testified that

---

[7] This rule is applicable to the Virgin Islands Superior Court by virtue of SUPER. CT. R. 7.

he rescued S.A.J. from attempted suicide. *Id.* Since these prior acts included such reprehensible conduct as allegedly attempting to set S.A.J. on fire with lighter fluid, defense counsel strategically abandoned the "rescue from suicide" defense because of the highly prejudicial nature of Francis' prior bad acts which the prosecutor would have presented to the jury.

Alternatively, defense counsel attempted to place Francis at a different location entirely from the scene of the crime, and instead "substituted two 'alibi witnesses' cloaked as 'impeachment witnesses'." *Id.* At a pretrial conference, defense counsel "emphatically" and unequivocally informed the trial court that Jones and Gibson were *not* alibi witnesses. *Id.* at 14-15. The trial court further found that defense counsel's discussion with her supervisor, Debra Watlington, concerning the labeling of the witnesses as "impeachment", strongly infers that the mislabeling of the witnesses was a reasoned, deliberate defense strategy.

In arguing that the trial court erred in excluding his witnesses at trial, Francis makes the absurd assertion that "the failure to designate Gibson as an alibi witness was not calculated to surprise the government." (Br. of Appellant at 25.) However, Francis' statements are completely contradictory to the evidence developed during the Evidentiary Hearing. Francis never argues that the findings of the trial court were erroneous. Rather, he seems to ignore the trial court's findings completely. Specifically, the trial court found that "in an effort to offer her client the 'best of both worlds', trial defense counsel made the tactical decision to mislabel 'alibi' witnesses as 'impeachment' witnesses."[8] (J.A. at 18.)

The term "alibi" is defined as "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." BLACK'S LAW DICTIONARY 84 (9th ed. 2009). Likewise, an alibi is a "defense of having been somewhere other than at the scene of a crime at the time the crime was committed." MERRIAM-WEBSTER'S DICTIONARY OF LAW 22 (Collector Ed., 2005). The evidence in the trial record establishes that Francis' defense counsel was well aware that the nature of Gibson's and Jones' testimonies would specifically place Francis at an entirely different location from the scene of the crimes, which is the very definition of

---

[8] *See* trial court's finding quoted on page 242 of this dissent.

"alibi." As a seasoned, highly experienced defense attorney and a veteran of felony jury trials for more than a decade, defense counsel's knowledge of the rudimentary notice requirement for alibi witnesses would be a fundamental matter. Therefore, defense counsel should have known that compliance with FED. R. CRIM. P. 12.1 is mandatory.

Moreover, the defense's actual knowledge of the nature of a witness's testimony is an important factor to be weighed by the trial court in deciding whether to exclude an alibi witness for failure to comply with the notice requirement. *United States v. Wood*, 780 F.2d 555, 560 (6th Cir. 1986). It is undeniable that defense counsel knew well in advance of trial, if not before the pretrial conference, what was the subject of these two witnesses' testimonies. As the trial court has analyzed, the defense counsel's behavior at trial strongly implies willful failure to comply with alibi witness notice requirements in an attempt to gain a tactical advantage.

Courts have consistently found that the deliberate failure to comply with alibi witness notice requirements in order to gain a tactical advantage is just grounds for exclusion. *See Noble*, 246 F.3d at 98-99; *United States v. Nelson-Rodriguez*, 319 F.3d 12, 35-37 (1st Cir. 2003); *Grooms v. Solem*, 923 F.2d 88, 90 (8th Cir. 1991). The exclusion of an alibi witness's testimony for failure to comply with notice requirements is not an abuse of discretion when courts find that the failure was motivated by an attempt to gain an unfair tactical advantage. *Henderson*, 241 F.3d at 650 (9th Cir. 2000). Further, when the failure to comply with alibi notice requirements is due to the willful attempt to gain a tactical advantage, the exclusion of alibi testimony as a sanction is not violative of a defendant's Sixth Amendment right to present a defense. *Eckert v. Tansy*, 936 F.2d 444, 446 (9th Cir. 1991).

This case involves more than a defense counsel's oversight, inadvertence, or forgetfulness. If it had involved those levels of mental culpability, exclusion of Francis' witnesses might have implicated his due process rights. *See Noble*, 246 F.3d at 98 (holding that exclusion of alibi testimony for failure to comply with notice requirements violated the defendant's constitutional rights, absent a finding that defense counsel's non-compliance with court rule was willful). However, this case involves willful conduct in an attempt to gain a tactical advantage over the prosecution. Accordingly, because the trial court made a finding that the defense counsel's failure to comply with FED. R. CRIM. P. 12.1 was a

248

tactical ploy, the trial court's decision to exclude Jones' and Gibson's testimony was not an abuse of discretion, and did not violate Francis' constitutional right.

### 2. The majority should not reverse a conviction on an issue that is waived

Another issue not raised by Francis on appeal, but which the majority finds significant, is the fact that the exclusion of the alibi testimony was invoked by the trial court *sua sponte.* The majority advances the following reasons for holding that the trial court erred in excluding the alibi witness testimony: the protection afforded by the disclosure requirement belongs to the opposing party only; exclusion for failure to comply with notice requirements are discretionary; and that criminal defendants have a well-established Sixth Amendment right to present a defense. The majority has provided no proper basis for invalidating the trial court's evidentiary exclusion especially in light of United States Supreme Court precedent.

First, the majority greatly understates the purpose of the alibi notice requirement rule as "simply to protect the rights of a specific party." Maj. Op. at 219. As I have highlighted above, the notice requirement goes to the very core of judicial integrity. The United States Supreme Court has stated that the purpose of the alibi witness requirement extends far beyond "simply protecting" the rights of one party. The United States Supreme Court has declared that when it comes to upholding the notice requirement rules the trial court has a "vital interest in protecting the trial process from the pollution of perjured testimony." *Taylor,* 483 U.S. at 417.

The majority further appears to proceed on the premise that the discretionary nature of the exclusion sanction in itself implies plain error. See Maj. Op. at 221. The majority concludes that the trial court should not have used its discretion to exclude witnesses because "at the time it made its decision" the *Taylor* factors could not have been satisfied by the trial court. Maj. Op. at 222. Even if this Court were restricted to consideration of only the record that was before the trial court at the time it made its

249

decision,[9] the majority fails to note that prior to trial the People made several requests for notice of alibi. Also, as aforementioned, Francis' defense counsel emphatically denied at a pre-trial conference that the designated witnesses were alibi witnesses. (J.A. at 14-15.) Accordingly, the trial court in this case had a sufficient basis to determine that the failure to comply with alibi notice requirements were based on much more than inadvertence or oversight. Rather, as the record illustrates, the trial court had a sufficient basis for concluding that defense counsel's failure to comply with the notice requirement for alibi witnesses was a deliberate and conniving attempt to mislead the trial court and the prosecutor in order to gain an unfair advantage at trial, which attempt destroys the integrity of the adversary process.

Moreover, while the majority correctly notes that a criminal defendant has a well-established right under the Sixth Amendment to present a defense, the United States Supreme Court has expressly held that the trial court's "vital interest in protecting the trial process from the pollution of perjured testimony" means that a defendant's Sixth Amendment Right to compulsory process cannot invariably outweigh concerns for the integrity of the trial process. *Taylor*, 484 U.S. at 417. This holding is especially true in situations, such as here, where the total trial record demonstrates a conscious and willful attempt by defense counsel to by-pass the alibi witness notice requirements while simultaneously propagating potential prejudice to the truth determining function of the trial process. *See id.*

Additionally, I note the inadvisability of awarding a remedy as drastic as a reversal to Francis based on an issue that Francis has never raised before this Court. We have held at numerous times that issues raised on

---

[9] The majority notes that the application of the *Taylor* factors is a legal question which should be accorded *de novo* review. *See* Maj. Op. at 221 (*citing United States v. Levy-Cordero*, 67 F.3d 1002, 1013 (1st Cir. 1995). When reviewing a case *de novo* the entire trial record should be considered and not just the relevant portion that was before the trial court prior to rendering a judgment. *See United States v. Blechman*, 657 F.3d 1052, 1067 (10th Cir. 2011) (noting that court reviews record *as a whole* to determine if any error is harmless); *United States v. Birch*, 39 F.3d 1089, 1094 (10th Cir. 1994) (in determining whether there is reversible error a court of review reviews the *entire* record *de novo*); and *United States v. Layne*, 973 F.2d 1417, 1420 (8th Cir. 1992) (a court of review looks at whether a violation to a Fourth Amendment right occurred *de novo* and after looking at the *entire* record).

appeal that are not briefed are deemed waived.[10] *See Simpson v. Golden*, 56 V.I. 272, 279-280 (V.I. 2012); *Browne v. People of the Virgin Islands*, 55 V.I. 931, 933 n.2 (V.I. 2011); *Dowdye v. Virgin Islands*, 55 V.I. 736, 750 n. 13 (V.I. 2011); *Harvey v. Christopher*, 55 V.I. 565, 577 (V.I. 2011); *Bernhardt v. Bernhardt*, 51 V.I. 341, 345-46 (V.I. 2009); etc. Furthermore, as will be explicated later, the trial court's sua sponte action was an attempt to prevent a manifest injustice that was deliberately and willfully orchestrated by defense counsel, in order to achieve an unfair advantage.

In this case, the *sua sponte* issue had not been briefed, and neither was it ever raised in the notice of appeal, nor was the trial court's *sua sponte* action objected to at trial.[11] Even if a lower court made a noticeable error at trial, the error is waived if it is not raised on appeal. *See Beckinger v. Township of Elizabeth*, 434 Fed.Appx. 164, 169 at n.3 (3d Cir. 2011)

---

[10] This principle is further reflected in Supreme Court Rule 4(c), which states that a notice of appeal "shall designate the judgment, order, or part thereof appealed from and the reason(s) or issue(s) to be presented on appeal." In addition, Rule 22(m) now clearly provides that issues not raised, or objected to, or not briefed, are "deemed waived for purposes of appeal."

The majority asserts that the issue is merely forfeited and not waived. The majority fails to reconcile, however, how the issue is merely forfeited when the rules of this Court dictate that the issue is *waived*, and not merely forfeited, for failure to brief. *See Nicholas v. People*, 56 V.I. 718 (V.I. 2012) (where this Court deemed waived issues that were perfunctorily raised in Appellate brief, but which were not sufficiently briefed in accordance with V.I.S.CT.R. 22(m)). While Rule 22(m) allows for discretion in addressing issues that were not raised or objected to before the Superior Court *or* raised or objected to but not briefed, it does not allow for such discretion where the issue was *neither* objected to at trial nor briefed before this court. I do not believe such discretion should be extended here.

[11] The majority cites a number of cases purportedly upholding the premise that an issue not raised below, not raised on appeal, and not brief can be a sufficient basis for reversing a felony conviction. *See* Maj. Op. at 216 n.10. However, in none of the cases cited in note 10 of the majority opinion did this Court *sua sponte* act in addressing issues. *Sua sponte* is a Latin term meaning that a court acts "[w]ithout prompting or suggestion; on its own motion." BLACK'S LAW DICTIONARY 1560 (9th ed. 2009). Although all of the cases cited by the majority in note 10 involve issues not raised at the trial level, all the issues addressed in the cases cited were briefed before this Court. *See Nicholas v. People*, 56 V.I. at 742 (V.I. 2012) (noting that the Appellant raised many issues, many not raised at trial, in a sixty page brief) and *Phipps v. Virgin Islands*, 54 V.I. 543, 546 (finding plain error in the trial court's instruction on self-defense that was not objected to at trial, but noting that the issue was one of several raised in the Appellant's brief). All the cases cited in note 10 of the majority opinion involve issues that were briefed. Accordingly, this court did not *without prompting or suggestion* address the issues cited as alleged by the majority. I note further that the dissenting opinion majority in *Francis*, 52 V.I. at 408 (Swan, J., dissenting), cited by the majority, was decided before the implementation of V.I.S.CT.R. 22(m), which mandates the waiver of issues not briefed.

(legal error on qualified immunity in a summary judgment proceeding was waived because appellant did not raise the issue); *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255, 263 (3d Cir. 2008) ("any issue that could have been but was not raised on appeal is waived and thus not remanded") (internal citations and quotation marks omitted). This waiver doctrine guarantees judicial integrity by ensuring that the necessary evidentiary development occurs at trial, and by preventing a surprise ruling based on arguments that the parties had no opportunity to present. *Lomando v. United States*, 667 F.3d 363, 380-81 n. 19 (3d Cir. 2011). To overturn Francis' felony convictions on an issue that was not preserved at trial, not raised on appeal, nor briefed by either party would be grossly inconsistent with the prior rulings of this Court, the Rules of this Court, and widely established legal precedent. Reversing Francis' conviction on this ground is not only contrary to case law precedent, but also creates the confusing, circuitous outcome by this Court *sua sponte* addressing the trial court's ruling on defense counsel's deliberate and willful failure to abide by the alibi notice requirement.

The majority notes that the historical purpose of FED. R. CRIM P. 12.1 has been to reduce prejudice and to serve as a protection for the prosecution against unfair surprise. *See, e.g., United States v. Carter*, 756 F.2d 310, 311-12 (3d Cir. 1985) ("The primary purpose of Rule 12.1 is clearly to prevent surprise at trial."); *United States v. Myers*, 550 F.2d 1036, 1042 (5th Cir 1977) ("Rule 12.1 was intended to prevent prejudicial surprise to the parties and to obviate the need for continuances which arise when one side introduces unexpected testimony at trial") (citing FED. R. CRIM. P. 12.1 Advisory Committee Notes and *Williams*, 399 U.S. at 82). In this case, the prosecution never objected to the testimony to be procured from Gibson. The majority cites to case law purportedly demonstrating that a trial court's *sua sponte* actions can be invalidated where the protection belongs to the opposing party and it is for them to motion the court or risk waiver. *See, e.g., Gov't of the V.I. v. Martinez*, 620 F.3d 321, 329, 54 V.I. 900 (3d Cir. 2010) (holding that the appellate court erred in *sua sponte* dismissing appeal as untimely because the government forfeited the protection of court rule requiring timely filing of notice of appeal by failing to raise issue with the court).

The majority fails to note, however, that in the case of alibi witnesses, there is a very real threat against judicial integrity due to the ease with which alibi testimony can be fabricated. *Williams*, 399 U.S. at 81.

Accordingly, when it comes to ensuring compliance with FED. R. CRIM. P. 12.1, "[m]ore is at stake than possible prejudice to the prosecution." *Id.* The willful conduct of an attorney that is motivated to obtain an unfair tactical advantage has an impact on "the integrity of the judicial process itself." *Taylor*, 484 U.S. at 416. "A trial judge's responsibility for ensuring a fair trial and preserving the integrity of the proceedings in her courtroom . . . extends beyond the wishes and motions of the litigants." *Hudson v. Curtin*, 371 Fed. Appx. 607, 611 (6th Cir. 2010) (citing *United States v. Lattner*, 385 F.3d 947, 960 (6th Cir. 2004)). Additionally, the trial court must safeguard the interest in the fair and efficient administration of justice.

The Third Circuit notes that in rare, exceptional cases a court of review can *sua sponte* address an issue not raised on appeal. *United States v. Bendolph*, 409 F.3d 155, 161 (3d Cir. 2005). This case, however, provides no basis to apply such an exceptional remedy, especially considering the circumstances surrounding the trial court's *sua sponte* action. At the risk of being redundant, the circumstances are that the trial court indicated a number of potential ethical violations on the part of defense counsel such as the fact that she intentionally "planted the seeds of ineffective assistance of counsel" at numerous points during the criminal proceedings, and that she intentionally cloaked alibi witnesses under the guise of "impeachment" witnesses to by-pass notice requirements. As highlighted above, the trial court found, based on defense counsel's conduct, that the failure to comply with alibi witness notice requirements were both willful and blatant. For instance, defense counsel "emphatically" denied to the trial court that Jones and Gibson would provide alibi testimony. (J.A. at 14-15.) However, as soon as Gibson began testifying, her testimony revealed that Francis was at a different place at the time of the crime. This type of testimony is testimony that an experienced defense attorney with over twelve years of criminal felony trial experience should have known would constitute alibi testimony; therefore, it would be subject to the notice requirement imposed by FED. R. CRIM. P. 12.1.

Considering such blatant and audacious behavior by defense counsel, the trial court's *sua sponte* action in excluding Jones' and Gibson's testimony was warranted, despite the fact that the motion for sanctions for failure to comply with FED. R. CRIM. P. 12.1 is usually first made by the opposing party. "[A trial] judge is independently responsible for

maintaining the integrity of judicial proceedings in his court and, concomitantly, must be accorded the necessary authority." *Worrell v. Houston Can! Academy*, 287 Fed. Appx. 320, 324 (5th Cir. 2008) (quoting *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802-03 (5th Cir. 2003).

The majority does not acknowledge the trial court's findings that trial defense counsel intentionally mislabeled the alibi witnesses. The role that such mislabeling played on the courts *sua sponte* action is completely overlooked. The majority opinion creates the disturbing precedent that a party can fabricate and intentionally "mislabel" alibi witnesses as another form of testimony in order to by-pass notice requirements, and if the opposing counsel is not sufficiently observant and clever to timely object to this deliberate act of deceit and "trickery", the trial court is powerless to act. Such precedent is one that would undoubtedly hinder a judge's ability to maintain the integrity of the judicial proceedings in the court. Accordingly, I find that the trial court did not err in excluding Francis' witnesses as a sanction for failure to comply with FED. R. CRIM. P. 12.1.

### D. Francis' sentence does not violate the constitution.

Francis' final contention on appeal is a "sufficiency of the evidence" argument cloaked under a "sentence un-proportionality" argument. Francis claims that the 27 & 1/2 year sentence he received was unduly harsh in violation of the Eighth Amendment of the Constitution. Specifically, Francis contends that the total 27 & 1/2 year penalty he received was particularly harsh because it was based on the "self-serving testimony of the victim and the inconclusive evidence presented at trial . . . for a crime in which there is a reasonable doubt as to the guilt of the Appellant." (Br. of Appellant 28.) Francis does not argue that the sentence he received was severe in relation to the crimes for which he was convicted. He also does not assert that the Court failed to comply with the provisions of the sentencing statute or that the sentencing statute is unconstitutional. Further, Francis does not contend that the statute imposing sentence for the criminal conduct in which he was charged with committing, was unduly harsh. On the contrary, Francis asserts that his sentence is harsh because it penalizes him for a crime, when there is a high probability that he did not actually commit the offense. Specifically, Francis argues that the unreliable testimony of the victim coupled with the trial court's exclusion of the testimony of Gibson and Jones created an

unreliable outcome in Francis' conviction and raised the "presumption that [Francis was] sentenced for offen[s]es that he may not have committed." (*Id.* at 29.) Thus, this issue is undoubtedly an "insufficiency of the evidence claim" couched as an Eighth Amendment rights violation.

Having concluded that the evidence was sufficient to convict Francis and that the trial court's exclusion of alibi witness testimony was proper, Francis' final argument on appeal is now moot.

## VI. CONCLUSION

For the reasons elucidated above, I would affirm the judgment of the Superior Court.